## PHILIPPINE AIR LINES, Inc. v. TEXAS ENGINEERING & MANUFACTURING CO., Inc.

### No. 12937.

United States Court of Appeals
Fifth Circuit.

May 17, 1950.

Rehearing Denied Aug. 8, 1950.

———◆———

William A. Rembert, Jr., Dallas, Texas, Searcy L. Johnson, Dallas, Texas, for appellant.

W. C. Gowan, Dallas, Texas, for appellee.

Before HOLMES, McCORD and RUSSELL, Circuit Judges.

HOLMES, Circuit Judge.

This is a suit for damages to appellant's C-54 airplane, which was injured by the appellee's employees while it was being converted from a cargo to a passenger plane. A cross-action was filed by appellee for losses allegedly sustained as a result of frequent work stoppages, necessitated by the failure of appellant's predecessor to make progress payments in accordance with the terms of the contract under which appellee was doing the work.

The court below entered judgment against the appellant on its suit for damages to the plane, and also denied the appellee any recovery on its cross-action. The appellant appealed to this court from the judgment against it; but the appellee did not appeal from that part of the judgment dismissing its cross-action.

The relevant facts are as follows: On February 27, 1947, the appellee and Far Eastern Air Transport, Inc., entered into a contract whereby appellee agreed to convert two C-54 cargo-type airplanes into passenger planes for a consideration of $286,000, to be paid in regular installments during the course of the work. There were other conditions in the contract, among them being a hold-harmless agreement, which undertook to indemnify the contractor during the progress of the work against any loss or damage to the planes unless it resulted from the willful misconduct of the contractor or its failure to exercise good faith in the performance of the contract. Appellee immediately began work on the planes, but had to stop on April 14, 1947, because of Far Eastern's failure to make its progress payments. It was advised not to resume work on the planes, due to the possibility of Far Eastern's selling out to Philippine Air Lines, Inc., hereinafter called appellant. By July 14, 1947, appellant had acquired all of Far Eastern's stock except 10 shares, which were held by certain officers to qualify them as directors. Appellant's officers and directors became the officers and directors of Far Eastern, which retained only its corporate existence. Appellant took over practically all of Far Eastern's assets, including the damaged plane. It requested appellee to continue its work under the contract, and assured it that progress payments would be made.

Appellee completed the first plane, and delivered it to appellant in November, 1947. The second plane was nearing completion when the damage occurred for which recovery is sought here. The circumstances were as follows: Appellee's test crew took the plane up for a testing flight. After the plane had landed and was being taxied in, the pilot told the flight engineer to pull the flap handle, which would raise the flaps of the plane and act as an air brake. Instead of pulling the flap handle, the engineer pulled the handle of the landing gear, which was about two inches from the flap handle, causing the landing gear to retract. As soon as the engineer felt the difference in the handles, he pulled the landing-gear handle back down, and was able to prevent the main landing gear from retracting, although the nose gear did retract and the plane tilted over on its nose, causing the damage in question. Appellee repaired the plane, and had it ready for delivery on March 1, 1948, but did not actually deliver it until June 23, 1948, when the appellant made its final payment.

This suit by appellant against appellee is for damages in the sum of $68,001.72, which was the cost of repairing the plane, and the difference in its value before and after the accident, plus the rental value of the plane for the two months consumed in making the repairs. Liability was based on the alleged simple negligence of appellee's employees. Appellee denied that its employees were negligent, saying that the accident was an unavoidable one; it also pleaded that it was entitled to be indemnified for any loss or damage to the plane by reason of the hold-harmless clause included in the contract, which appellant took over from its predecessor, Far Eastern. Appellee also filed a cross-action for damages in the sum of $24,500, alleged to have been sustained by it by reason of costly work stoppages occasioned by appellant's failure to make its progress payments on time. The trial court found that appellant took over all of Far Eastern's assets and liabilities, including the present conversion contract; that such contract provided for the holding harmless by Far Eastern of the appellee for all such damages as were not the result of appellee's willful misconduct or failure to exercise good faith; that there was no culpable negligence on appellee's part so as to make it liable; and that, since neither party had met the burden of proving its respective claim, appellant was to take nothing by its main suit,

aud appellee was to take nothing by reason of its cross-action.

 Since there is no cross-appeal, and no sufficient basis to set aside the findings below that there was no willful misconduct or failure to exercise good faith on the part of appellee, the most serious question presented to us is the validity of the hold-harmless agreement. Preliminary to that question is the appellant's contention that it did not assume that obligation because it did not assume the liabilities of its predecessor, Far Eastern. This contention cannot be upheld. The contract provided that it should be binding upon the respective heirs, successors, and assigns, of the parties. Neither at law nor in equity may the appellant be deemed to have taken over only such portions of the contract as were beneficial to it. On the contrary, it acquired the contract *cum onere*. The first plane was completed and delivered to appellant under this contract. The entire course of dealings between appellant and appellee indicates that each of them thought the entire contract was binding on both of them. The lower court, after considering the course of dealings between these parties, found that the appellant took over the stock, assets, and liabilities, of Far Eastern, and proceeded to supervise the completion of the contract that Far Eastern had theretofore made with the appellee. There is ample evidence to support this finding, and we are not authorized to disturb it.

Appellant contends that the following clause, which was a part of the contract under which appellant's work was done by the appellee, is invalid because against public policy: "Purchaser agrees with respect to each airplane delivered to contractor's plant for modification to indemnify and hold contractor harmless for damage or destruction to said aircraft, unless such loss, damage or destruction results from willful misconduct or failure to exercise good faith on the part of the contractor or contractor's representatives having supervision or direction of the operation of the whole of contractor's business."

 The contention is that the above provision is within the doctrine that does not permit certain persons to contract against being liable for their own negligence. Numerous cases are cited to support appellant's position, but we think they are all distinguishable from this one. We recognize the applicability of the doctrine in cases involving the negligence of common carriers, public utilities, parking lot operators, inn-keepers, and others who are dealing with the general public and whose business is affected with a public interest; but, in the instant case, there is no public policy that strikes down the save-harmless provision of this contract between private corporations. The language used was the result of arms-length bargaining between the parties, and is binding upon them and their privies. That one should save the other harmless from simple negligence is no more against public policy in this instance than an indemnity clause in an insurance policy would be. The parties simply agreed between themselves that a well-known industrial risk should be borne by the one who owned the plane and was paying the cost of converting it. Insurance policies often indemnify assureds against their own negligence. By reason of the hold-harmless clause, appellee accomplished the same result in this case.

Affirmed.