M. J. DELANEY COMPANY, Appellant,

v.

John W. MURCHISON, Appellee.

No. 149.

Court of Civil Appeals of Texas.

Tyler.

July 15, 1965.

Rehearing Denied Sept. 16, 1965.

Jack Pew, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, William H. Kugle, Athens, for appellant.

W. B. Fields, Fields & Fields, Jack T. Life, Life, Bolding & Key, Athens, for appellee.

MOORE, Justice.

Appellant, M. J. Delaney Company, a partnership, hereinafter referred to as the company, brought this suit against appellee, John W. Murchison, to recover $27,372.00 under a contract with Murchison for the drilling of an oil well known as the Robinson well. Prior to the drilling of the

well, the company wrote Murchison as follows:

"Dear Mr. Murchison:

"This confirms the arrangement, verbally made, by which we are to drill your #1 Robinson Well, Frankston Area, East Texas, to the James Lime encountered at or above 10,000 feet.

"We have previously completed two wells in this immediate area for you —#1-A Eva Hurt, #-B Eva Hurt.

"The stipulations, responsibilities, billings and payments on this well will be the same as those on the two completed wells above mentioned.

"We each assume to each other, the same obligations granted in performing on these wells.

"If you understand this as our agreement will you please accept in the place below provided therefor and return two signed copies for our use.

"With kindest regards, we are

"Yours very truly,
"M. J. DELANEY CO.
"/s/ Wm. D. McBee
"Wm. D. McBee"

Murchison accepted the same and sent it back to the company.

After the well had been drilled to the contract depth of 10,004 feet, it appeared that it would produce oil and Murchison then instructed the company to set the pipe in the well. While the drilling crew was circulating the drill pipe, preparatory to setting the pipe, the company's driller, W. A. Holder, stopped the rotary while the Kelly was down and at a time when the bit was at or near the bottom of the hole. As a result, the drill pipe became stuck in the hole.

As will be hereinafter shown, the jury found that the company's driller was negligent in stopping the rotary and that such negligence was a proximate cause of the pipe becoming stuck. After considerable time and expense, the company succeeded in unsticking the pipe and later brought the well in as a producing oil well.

The company immediately billed Murchison for the sum of $49,519.80 covering the contract price of $4.95 per foot for the drilling of the well to the 10,004 foot level. He was not billed at that time for the expense of unsticking the pipe; however, the bill contained a notation reading as follows:

"Day work and third party service charges will be rendered separately at a later date."

Murchison paid the bill and it was not until several months later that he was billed for an additional amount of $20,927.80 covering the expense for unsticking the pipe and also for the sum of $6,444.20 covering the additional expense in connection with bringing in the well after the pipe was unstruck, totaling $27,372.00. He refused to pay the bill and the company brought suit alleging a breach of contract and in the alternative for quantum meruit. At the time of the trial Murchison admitted that he owed the $6,444.20 for the expense of bringing in the well and deposited that amount into the Registry of the Court. He refused to pay the remaining $20,927.80 which represented the expense in unsticking the pipe. The primary question involved is whether Murchison or the company is to stand the loss in unsticking the pipe.

The company bases its claim upon the above letter agreement providing that the Robinson well was to be drilled under the same stipulations, responsibilities and obligations as the Hurt wells, and contends that since the Hurt wells were drilled under a written contract providing that Murchison would "8. Assume all risks after the well had been drilled to the contract depth" he became bound by this and all other terms and conditions of the previous agreement and therefore assumed all risks including the risk of the company's own negligence.

Murchison denied that he signed the contract or ever assented to the provisions thereof and therefore never agreed to assume the risk of the company's negligence.

He also alleged that because Mr. McBee, a partner in the company, agreed to unstick the pipe and assume full responsibility and failed to notify him that it was his responsibility, the company was estopped to assert any claim against him.

The cause was tried before a jury and in response to the Special Issues submitted, the jury found:

(1) That Murchison and the company entered into an agreement respecting the drilling of the Eva Hurt wells;

(2) That the written contract dated May 16, 1961, prepared by the company and forwarded to Murchison correctly states the tems and conditions of the agreement in regard to the Eva Hurt wells;

(3) That Murchison received the contract prior to commencing either of the Eva Hurt wells;

(4) That Murchison permitted the company to commence work under the contract without notifying the company that he did not accept the contract;

(5) That Murchison never at any time prior to the completion of the Robinson wells objected to any of the terms of the contract;

(6) That Murchison accepted the benefits of the company's work done on the two wells;

(6a) That the work performed by the company on the Robinson well, which is the well in question, was performed in a good workmanlike manner;

(12) That W. D. McBee, a partner in the Delaney Company, told Murchison that the company would assume full responsibility for getting the pipe unstuck;

(13) That Murchison believed and relied upon such statement.

(13a) That but for such statement, Murchison would have taken charge of the operations and expenditures in getting the pipe unstuck;

(15) That the company's driller, W. A. Holder, was negligent in stopping the rotary;

(16) That such negligence was a proximate cause of the pipe becoming stuck;

(19) That the company's driller, Holder, was negligent in stopping the rotary with the bit at or near the bottom of the hole;

(20) That such was not the proximate cause of the pipe becoming stuck;

(21) That Holder was guilty of negligence in failing to keep the rotary drill pipe turning;

(22) That such was a proximate cause of the pipe becoming stuck;

(25) That the company, by the conduct of its partners and employees, after the pipe became stuck led Murchison to reasonably believe that the company had assumed full responsibility for getting their drill pipe unstuck;

(26) That Murchison relied upon this conduct and believed in good faith that the company would not hold him responsible for the cost of getting the pipe unstuck;

(27) That but for such conduct and his reliance thereon, Murchison would have taken charge of the drilling operations and expenditures in getting the pipe unstuck.

Prior to judgment appellant, M. J. Delaney Company, made a motion to disregard all jury findings made in favor of the appellee, which motion was overruled. Appellee Murchison made a motion to disregard the jury's findings in Special Issues 1–6 and alternatively for judgment on the verdict. The court, without making any ruling upon appellee's motion to disregard, rendered judgment on the verdict. The judgment awarded the appellant-company a recovery of only the sum of $6,444.-20 which appellee had previously paid into the Registry of the Court, and denied a recovery for the $20,927.80 in dispute.

The company duly perfected this appeal bringing forward fourteen Points of Er-

ror, which are all briefed together, contending that since the trial court rendered judgment on the entire verdict, the effect of the judgment amounts to an affirmative finding that Murchison had agreed to "assume all risks" in the performance of the contract. Therefore, the company contends that since it was undisputed that $20,927.80 was a reasonable charge for unsticking the pipe, it is entitled to judgment because under the findings of the jury, appellee is bound by the written contract which provided that he would assume all risks after total depth had been reached, unless appellee has a valid defense. Appellant thus contends that the agreement to "assume all risks" amounts to an indemnity contract agreeing to indemnify against its own negligence and that the only question is whether appellee's defenses are valid—(1) whether appellee is excused from payment because of negligence in the work on the well which occurred after total depth had been reached, and (2) whether appellee produced evidence of a case of estoppel.

Appellee Murchison contends that the judgment exonerating him from liability must be sustained because: (1) there is no evidence that he ever signed or assented to the written contract prepared by McBee covering the Hurt wells; (2) there is no jury finding or evidence showing that he agreed to be bound by the same terms and conditions in the drilling of the Robinson well as the Hurt wells; and (3) even though it be found that he did agree to assume all risks in the drilling of the Hurt wells, the language used in the letter agreement covering the Robinson wells is not sufficient to show that he agreed to assume the same stipulations, responsibilities and obligations as those in the drilling of the Hurt wells. In any event, he contends that an agreement to assume all risks would not bind him to assume the risk of the company's own negligence.

█ In the absence of any ambiguity, the construction of the contract becomes a question of law for the determination of the trial court. Tower Contracting Co. v. Flores, 157 Tex. 297, 302 S.W.2d 396.

> "The cardinal rule to be observed in the construction of contract is to ascertain and give effect, whenever possible, to the real intention of the parties, as that intention is revealed by the language used in the agreement. * * *" 13 Tex.Jur.2d, Par. 122, page 287.

It is undisputed that Murchison never signed the written contract dated May 16, 1961, relating to the Hurt wells. The jury found, however, that the instrument correctly stated the terms and conditions of their agreement in the drilling of those wells.

█ The company takes the position that the letter agreement covering the Robinson well clearly indicates that it was the intention of the parties to incorporate and adopt all of the provisions of the written agreement relating to the drilling of the Hurt wells. Murchison takes the position that the letter agreement fails to indicate any intention to adopt the terms of the previous contract. If the letter agreement is to be construed as having adopted and incorporated the terms and provisions of the contract relating to the Hurt wells, Murchison must be held to have agreed to assume all risks after the Robinson well had been drilled to contract depth. If, on the other hand, the letter agreement failed to adopt the previous contract, Murchison would not be liable for the negligence of the company on the Robinson well, because there is nothing in the letter agreement or the evidence showing that he agreed to assume any risk in the drilling of the Robinson well.

> " * * * For the terms of another document to be incorporated into the document executed by the parties, the reference must be clear and unequivocal, and must be called to the attention of the other party, he must consent

thereto, * * *." 17A C.J.S. Contracts § 299, page 136.

In the case of Newton v. Smith Motors, Inc., 122 Vt. 409, 175 A.2d 514, 516, the rule is stated as follows:

"[T]he extrinsic writing must be connected by specific reference or by such mutual knowledge or understanding on the part of both parties that reference by implication is clear. If the secondary instrument was not mentioned in the undertaking and was foreign to the minds of the parties at the time of their undertaking, it is clearly irrelevant as an aid to interpretation."

An examination of the letter contract will show that the letter nowhere refers to a previous "contract" or "written agreement" nor does it make any reference to the contract which was prepared by McBee or refers to the date thereof. In making reference to the "same obligations" it does not say whether those obligations were oral or written, or were both oral and written. The previous contract was a lengthy instrument containing numerous provisions. Murchison admitted having received same. McBee twice requested Murchison to sign and return same, but he failed to do so. Although the jury found that the Hurt wells were drilled under the terms and provisions of this instrument, it was not shown whether or not there were additional oral or written agreements and obligations involved in the drilling of those wells. In pursuit of our inquiry as to whether the parties intended to adopt the provisions of the previous contract, a logical inquiry would be: If the parties intended that the previous contract was to become a part of the present contract, why did the parties omit any reference to the written contract? It would have been a simple matter to have made some reference thereto. The absence to any specific reference to such a well-known instrument strongly indicates that the parties did not intend to contract with reference thereto. Construing the letter as written, we think it obvious that the parties did not have any intention of becoming bound by all of the terms and conditions of the previous written agreement, because nothing is said to indicate they intended that instrument to become a part of the letter contract.

■ The question of whether a later contract is to be deemed as an independent one or to become incorporated with or correlated to the old agreement is to be determined by the intention of the parties as expressed in the later agreement. Frierson v. International Agricultural Corp., 24 Tenn.App. 616, 148 S.W.2d 27.

"'In order that separate writings may be considered together their relation or connection with each other must appear on their face; and this requirement is satisfied either by express reference from one writing to the other, or, at least where each writing is signed, by internal evidence of their unity.'" Briden v. Osborne, 184 S.W.2d 860 (Tex.Civ.App.).

No issue was requested or submitted inquiring as to whether the parties intended to adopt the provisions of the written contract as a part of the contract for the drilling of the Robinson well. Therefore, there being nothing in the letter agreement showing Murchison assumed all risks and there being no findings that the parties intended to adopt or otherwise become bound by their previous agreement, there is no basis for contractual liability for reimbursement for the company's loss caused by its own negligence in drilling the Robinson well.

■ The most that can be said for the company's contention in this connection is that the evidence raised a question of fact as to the intention of the parties and having failed to request any issue as to the intention of the parties in this respect, the issues were waived and must be deemed to have been found in support of the judgment. Rule 279, Texas Rules of Civil Procedure; Government Personnel Mut. Life

Ins. Co. v. Wear, 247 S.W.2d 284 (Tex. Civ.App.).

■ Even though we be mistaken in the above conclusion and even though we concede that Murchison did contract to assume all of the risks after the contract depth had been reached, we have nevertheless concluded that the wording of the agreement is not sufficiently definite and clear enough so as to embrace the obligation to indemnify the company for its own negligence and carelessness in the performance of its contractual obligation.

The rule to be followed in determining the question was recently set forth by the Supreme Court as follows:

"In Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775, this Court discussed the rule that an indemnity agreement will not protect the indemnitee against the consequence of his own negligence unless the obligation is expressed in unequivocal terms. The obvious purpose of this rule is to prevent injustice. A contracting party should be upon fair notice that under his agreement and through no fault of his own, a large and ruinous award of damages may be assessed against him solely by reason of negligence attributable to the opposite contracting party. See, Perry v. Payne, 217 Pa. 252, 66 A. 553. Texas does not, however, follow the refinement of the rule which requires that the agreement, in order to effectually embrace the negligence of the indemnitee, should expressly so state. It was stated in Friedman that, 'It is not necessary * * * for the parties to say in so many words that they intend to protect the indemnitee against liability for negligence.' The rule is that when the wording of the contract is sufficiently broad to cover the negligence of the indemnitee and the situation of the parties with reference to the subject matter of the contract is such that it can clearly be said that the parties intended that the neg-

ligence of the indemnitee should be covered by the indemnity agreement, then liability thereunder will be sustained whenever the injury asserted as a basis for indemnity is one which arose out of the operations embraced by the contract." Spence & Howe Construction Company v. Gulf Oil Corporation, 365 S.W.2d 631, (S.Ct.), 1963; Ohio Oil Company v. Smith, 365 S.W. 2d 621, (S.Ct.).

In Friedman the court pointed out that the situation of the parties with reference to the subject matter of the contract is to be accorded some consideration in determining whether the provisions of an indemnity contract clearly covers the negligence of the indemnitee. At the time the pipe became stuck, the work was being done in accordance with the instructions and under the direct supervision of the company. Both parties knew that the work required experienced personnel with some skill and ability and in this connection both parties will be presumed to have known that:

"* * * Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a * * * breach of the contract. * * *" 38 Am.Jur., Sec. 20, page 662; Montgomery Ward & Co. v. Scharrenbeck, 146 Tex. 153, 204 S.W. 2d 508 (S.Ct.).

An examination of the Texas cases construing contracts of indemnity will reveal that in all cases where the indemnitor was held liable for the indemnitee's own negligence, the contract contained broad and comprehensive language showing the intent to assume such responsibility.

In Standard Ins. Co. of New York v. Ashland Oil & Refining Co., (10th Cir.) 186 F.2d 44, the question was whether a party who had agreed to assume the "risk" also assumed the risk of negligence. In

holding to the contrary, the court quoted the following language from the Supreme Court of Oklahoma:

> " 'We would not hold that a contract governing and exempting liability for future damages resulting from the negligence of the defendant might not be entered into, but it must be clear, definite, and unambiguous, and show on its face the exact nature, character and extent of the damages which are within the contemplation of the minds of the contracting parties, * * *' "
> Also see: Standard Oil Company of Texas v. Wampler, 218 F.2d 768 (5th Cir.); Thompson-Starrett Co., Inc. v. Otis Elevator Co., 271 N.Y. 36, 2 N.E. 2d 35; Otis Elevator Co. v. Maryland Casualty Co., 95 Colo. 99, 33 P.2d 974.

Considering the relationship of the parties and the work to be performed, we believe that it would be beyond reason to construe this provision of the contract so that it would mean that Murchison contracted to excuse the company from its own negligence. To hold that Murchison agreed to indemnify the company would be to say that by the company's own contract—which must be construed against it as the maker—if its construction were allowed, Murchison paid to place himself at the mercy of, and subject to, the wanton carelessness of the company in the performance of its contract.

That the parties did not actually intend for Murchison to assume *all* the risks is demonstrated by the provisions of Paragraph V of the contract wherein it is provided:

> "V. Contractor also agrees to:
>
> "* * *
>
> "(n) Assume *all* liability, and indemnity of Well Owner against any liability for injuries and/or damages to Contractor's employees or to any other person or property, incident to or resulting from the operations of Contractor

hereunder; * * *" (Emphasis supplied).

We therefore hold that the language used is not so clear, explicit and unambiguous as to compel the conclusion that the parties intended that the company would be relieved from the consequences of its own negligence.

In view of the rulings hereinabove made, holding that there was no liability under the contract, we will not undertake to make a lengthy discussion on the question of whether or not the evidence is sufficient to sustain the defense of estoppel. We will add only that we have examined the evidence and have found it to be sufficient to support the findings of the jury and the judgment based thereon and we are of the further opinion that same is not against the overwhelming weight and preponderance of the evidence.

The judgment of the trial court is affirmed.