**FREIGHT TERMINALS, INC., Plaintiff,**

v.

**RYDER SYSTEM, INC. and Ryder Truck Lines, Inc., Defendants,**

v.

**MERCURY FREIGHT LINES, INC.,**
**Third-Party Defendant.**

**Civ. A. No. 66–H–369.**

United States District Court,
S. D. Texas,
Houston Division.

April 30, 1971.

William M. Schultz, Albert S. Weycer, Ladin, Weycer & Schultz, Houston, Tex., for plaintiff.

Charles R. Gregg, Hutcheson, Taliaferro & Grundy, Houston, Tex., for defendant Ryder Truck Lines, Inc.

W. Robert Brown, Liddell, Sapp, Zivley & Brown, Houston, Tex., for defendant Ryder System, Inc.

Royce Till, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for third party defendant.

## MEMORANDUM OPINION

BUE, District Judge.

In this somewhat complex diversity action plaintiff, as lessor, seeks the re-

covery of damages which allegedly resulted from a breach of the covenants in a lease agreement. Plaintiff leased the subject property and building in this action to T.S.C. Motor Freight Lines, Inc. (T.S.C.) on June 30, 1950. The lease was to commence January 1, 1951, and to extend for a term of 15 years, lapsing on December 31, 1965. Plaintiff had erected the building solely for the purpose of leasing it as a motor freight terminal, and it was understood by the parties that T.S.C. was to utilize the premises solely for such a purpose. The lease agreement required the lessee to keep the premises in good repair, without waste, and to return them to plaintiff in the same condition that they were in when originally leased, except for ordinary wear and tear resulting from the usual and customary operations of a motor freight terminal.

In 1959, Ryder System, Inc. (Ryder System) executed a guaranty agreement with the plaintiff whereby Ryder System guaranteed the performance of all the terms and conditions undertaken by T.S.C. in the original lease agreement. Simultaneously with this transaction, Ryder System acquired all of the capital stock of T.S.C. and the name of T.S.C. was changed to Ryder Truck Lines, Inc. (Ryder Truck). From this date forward Ryder Truck operated a motor freight terminal at the premises involved in this cause. However, Ryder System still maintained some control over the operations conducted at the freight terminal and also, on occasion, dealt with the plaintiff involving the said property.

Subsequently, the premises began to evidence a "run-down" appearance, largely from lack of repairs. At that time plaintiff informed Ryder System that it was not upholding its responsibilities pursuant to the lease agreement. Ryder Truck vacated the premises in July, 1962, but continued to make rental payments. However, as a result of plaintiff's demands, Ryder System employed an independent contractor in 1963 to make general repairs on the building and the yard. These repairs were ul-

timately made for which the contractor was paid approximately $10,000.

On November 15, 1963, Ryder System entered into a sublease with Mercury Freight Lines, Inc. (Mercury) whereby, for a substantial reduction in the amount of rental payment, Mercury was to lease the premises for the remainder of the term of the original lease. This agreement was executed with the consent of the plaintiff, but it was agreed that Ryder System and Ryder Truck would remain bound by the terms of the original lease agreement. Mercury then operated a motor freight terminal at the said premises until the termination of the original lease agreement on December 31, 1965.

The complexities of this case do not end there. Prior to the termination of the lease, Ryder System entered into a stock purchase agreement with International Utilities, Inc. (International), whereby all of the capital stock of Ryder Truck owned by Ryder System was sold to International. Ryder System in this stock purchase agreement represented that Ryder Truck had no existing leases, contracts or commitments which were in default and further represented that there was no litigation, proceeding, or investigation pending or threatening which could adversely affect the financial prospects of Ryder Truck.

Immediately after the original lease of the motor freight terminal was terminated on December 31, 1965, plaintiff investigated the premises and, upon finding the building and yard in unsatisfactory condition, instigated this action against the defendants, Ryder System and Ryder Truck. These defendants then impleaded Mercury into the suit as a third party defendant.

The basic suit as to whether or not there had been a breach of the covenants of the original lease agreement, and, if so, the amount of damages owed to plaintiff was submitted to a jury for determination. The jury found that the defendants had failed to return the premises in as good repair and condition as when received which they had cov-

enanted to do, and, as a result, that the lease agreement had been breached. It was also the jury's finding that the building, yard, parking area, and air-conditioning system had been damaged, as of November 15, 1963, to such an extent that the sum of $45,104 would have to be expended to repair the premises so as to put them in a condition that would satisfy the terms of the lease agreement. Further, it was found that damages in an amount of $7,486 had resulted to the premises from November 15, 1963, to December 31, 1965, while they were occupied by Mercury under this sublease. Lastly, the jury found that the plaintiff was entitled to $16,000 in attorney's fees for the prosecution of this suit, pursuant to the terms of the original lease agreement.

The defendants in the suit have agreed that the Court is to make the determination as to which one or more of the defendants are liable for the damages found by the jury, taking into account the various legal relationships between them recited above. These defendants have asserted several contentions in an attempt to avoid liability.

Ryder Truck contends that Mercury is liable for the entire amount of damages because of the wording of the sublease agreement of 1963. It is pointed out that the sublease included a provision reciting that Mercury agrees "to return it at the end of the underlying main lease in a satisfactory condition pursuant to the terms of such main lease." As a result of this wording, Ryder Truck asserts that Mercury assumed the position of lessee and agreed to undertake the covenants to repair and return the premises in a condition that would be satisfactory pursuant to the terms of the original lease. Ryder Truck also contends that Ryder System should be held liable because Ryder Truck was a mere instrumentality of Ryder System and, as a result, Ryder System is the real party in interest. Further, it is asserted that Ryder System should be liable by way of indemnity as to any damages that Ryder Truck might suffer. Ryder

Truck reaches this conclusion by relying upon the terms of the stock purchase agreement entered into on February 12, 1965, and closed on August 16, 1965, whereby Ryder System warranted to International that Ryder Truck was not in breach of any covenant of any lease or contract outstanding at that time. International assigned its rights under this stock purchase agreement to Ryder Truck on March 25, 1970.

Ryder System joins in Ryder Truck's contention that Mercury should be held liable as to all the damages found by the jury because of the wording of the sublease of 1963. It is also contended by Ryder System that it has not breached the stock purchase agreements because the damages found by the jury did not come within the terms of the covenants of the said agreement; furthermore, even if it did breach, Ryder Truck is not entitled to attorney's fees because there is no specific provision for such a recovery.

Mercury contends that the sublease agreement of 1963 can by no means be interpreted as a contract to assume Ryder System's obligations under the original lease. This argument is bolstered by the contention that the sublease agreement is ambiguous and as a result this Court should ascertain the parties' intentions by the use of parol evidence. It is, therefore, Mercury's position that it is not subject to any liability created prior to the time it took possession of the leased premises on November 15, 1963.

I.

## THE ORIGINAL LEASE AND THE GUARANTY AGREEMENT

The original lease between plaintiff and T.S.C. required the lessee to keep the premises in good repair and to return the premises in the same condition that they were in when originally leased, excepting ordinary wear and tear resulting from customary use. That agreement also made provisions for plaintiff's attorney's fees in the event it became

necessary to enforce the lease agreement by legal process.[1] As previously indicated, Ryder System executed a guaranty agreement in 1959 with the plaintiff whereby Ryder System guaranteed the performance by Ryder Truck of the covenants in the lease agreement.[2] By this agreement Ryder System became bound to perform the covenants in the lease agreement. Ryder Truck as the principal obligor would be required to indemnify Ryder System for any payments which Ryder System was forced to make pursuant to the terms of the guaranty agreement. Fox v. Kroeger, 119 Tex. 511, 35 S.W.2d 679 (1931); Scott Paper Co. v. Johnson, 406 S.W.2d 548 (Tex. Civ.App.—Waco 1966, no writ hist.)

However, Ryder Truck asserts that it should not be subject to any liability under the lease agreement because Ryder System was at all times the real party in interest. It is contended that Ryder System exercised such domination and control over Ryder Truck with regard to the lease so as to make Ryder Truck a mere tool or instrumentality of Ryder System. It is also asserted that the activities of the parties are indicative of an intent that Ryder System was to be substituted as the primary lessee pursuant to the provisions of the lease agreement. While it is true that between the years 1959 and 1965 Ryder System owned all of the stock of.Ryder Truck, both corporations at all times material to this lawsuit were maintained and operated as separate entities. It is also noteworthy that Ryder Truck's predecessor, T.S.C., operated the freight terminal for approximately eight years prior to Ryder System's acquisition of the capital stock of Ryder Truck. From the evidence presented by the parties, it is not apparent that Ryder System should be held to have controlled and utilized Ryder Truck as a subsidiary for the purpose of carrying out its own policies. Therefore, this Court will not pierce the corporate veil and hold Ryder System liable as the true owner. This conclusion is reached because it is evident from the proof that Ryder Truck did occupy and operate a motor freight terminal at the lease premises and, further, that Ryder Truck did maintain a separate management and control from Ryder System. See Houston-American Life Insurance Co. v. Tate, 358 S.W.2d 645 (Tex.Civ.App.—Waco 1962, no writ hist.); State v. Swift & Co., 187 S.W.2d 127 (Tex.Civ.App.—Austin 1945, writ ref'd). See generally, 13A W. Fletcher, Cyclopedia of the Law of Private Corporations § 6222, at 33 (Rev.Ed.1961).

1. In parts relevant to this action, the original lease agreement states that:

Lessee further agrees to suffer no waste upon said premises and shall, at its own expense and costs, keep them in as good repair and condition as when received, including all plumbing, air-conditioning and heating equipment, and shall, at the expiration of this lease, in whatever manner its termination may be brought about, deliver said leased premises to Lessor in as good order and condition as they were immediately upon the erection and construction of said building, ordinary wear and tear, and damage by fire, Acts of God and windstorm, alone excepted.

Lessee shall pay and discharge all costs and expenses, including reasonable attorney's fees, that shall arise from or in connection with enforcing the covenants and agreements of this lease by Lessor, and all of the covenants and agreements herein described shall extend to and be obligatory upon the successors, assigns or heirs of either and all of the parties hereto, it being understood and agreed that Lessor may at any time assign this lease and all of its rights hereunder.
Plaintiff's Exhibit No. 1, at 4, 11.

2. [T]he Guarantor will well and truly pay the said rent or any arrears thereof, or any other sum or sums provided to be paid by the Lessee under any of the terms and provisions of the aforesaid lease agreements, that may remain due to the said Freight Terminals, Inc., its successors and assigns, or that may become due without requiring any proceedings to be taken against the said Lessee for the collection of such amount or amounts.
Plaintiff's Exhibit No. 3, at 1.

## II.

### THE STOCK PURCHASE AGREEMENT

By the terms of the stock purchase agreement entered into between Ryder System and International in 1965, Ryder System represented that Ryder Truck had complied with the provisions of all of its leases, contracts and commitments outstanding at the time of the stock purchase agreement. It was also warranted that there was no litigation, proceeding or investigation pending or threatened which could result in any material or adverse change in the business prospects of Ryder Truck. It was further agreed that the foregoing representations would survive closing of the agreement and that Ryder System would indemnify International for any inaccuracy or breach of the said agreement.[3] Ryder System asserts that they are not in default of the stock purchase agreement because the claim of plaintiff herein is nothing more than a claim that is "instant to the normal conduct of the business" of Ryder Truck and, therefore, not a "litigation proceeding or investigation pending

or threatened" which could result in any material alteration of Ryder Truck's business prospects. It is also claimed that Ryder System was not in default of the stock purchase agreement, because no legal process had been instituted at the time the agreement was closed. Furthermore, it is urged that Ryder System should be able to rely upon Mercury's obligation to return the lease premises to the lessor in the condition required by the provisions of the original lease. Finally, Ryder System contends that it cannot be liable for Ryder Truck's attorney's fees, because there is no provision in the stock purchase agreement for such a recovery.

■ It is quite evident from examination of the terms of the stock purchase agreement that Ryder System was in default. This is so because plaintiff had made numerous requests upon Ryder System to repair the premises and, furthermore, had notified Ryder System that it had breached its obligation under the original lease agreement. Also, Ryder System's argument that the damages involved in this suit are of the type

---

3. The stock purchase agreement states in material part:

(k) Neither the Ryder Trucking Group nor Hoover have any existing material leases, contracts, commitments or powers of attorney whose duration extends beyond July 31, 1965, except as summarized in Schedule B hereto, and have complied with all of the provisions of such instruments and of all other contracts and commitments to which they are parties and are not in default under any thereof. All such leases, contracts, commitments, and powers of attorney have been made in the ordinary course of business and are of a character, type and amount normal and usual in the ordinary course of business.

&ast; &ast; &ast; &ast; &ast;

(m) Except for suits or claims of a character incident to the normal conduct of the business of the Ryder Trucking Group and of a type, character, and amount normal and usual in the ordinary course of business, there is no litigation, proceeding or investigation pending or threatened which could result in any material adverse change in the business or prospects or condition (financial or other-

wise) of the Ryder Trucking Group or in any of their properties or assets or which questions the validity of any action taken or to be taken pursuant to or in connection with the provisions of this Agreement, nor does Seller know or have any reasonable ground to know of any basis for any such litigation, proceedings or investigation.

&ast; &ast; &ast; &ast; &ast;

The foregoing representations and warranties shall survive Closing hereunder and Seller agrees to indemnify and hold harmless Purchaser against any inaccuracy in or breach thereof. Seller shall have the right to direct any proceedings, legal or otherwise, relating to any such matters, will assume any and all costs relating thereto and will have the right to retain counsel of its choice in connection therewith. Purchaser agrees to, and to cause the Ryder Trucking Group to, cooperate with Seller in any such proceedings in any way Seller may reasonably request which shall not involve cost to Purchaser or the Ryder Trucking Group.

Defendant's (Ryder Truck) Exhibit No. 10, at 14–15, 16.

which occur in the ordinary course of business does not comport with the proof adduced at the trial. The jury found that a substantial amount of damages had resulted to the building and premises which did not occur in the ordinary business of a motor freight terminal. The Court therefore concludes that there was default of Ryder System under the stock purchase agreement after having examined the agreement's provisions including those pertaining to indemnity which are clear in meaning and devoid of any ambiguity. *Compare* James Stewart & Co. v. Mobley, 282 S.W.2d 290, 294 (Tex.Civ.App.—Dallas 1955, writ ref'd).

■ Ryder System contends that it cannot be held liable for the attorney's fees of Ryder Truck created by the necessity of its defending the action instigated by the plaintiff. It is Ryder System's contention that an indemnitor cannot be liable for such an expense, unless the indemnity agreement specifically so states. Ryder System cites W. R. Grimshaw Co. v. Martin Wright Electric Co., 283 F.Supp. 628 (W.D.Tex.1968), reversed on other grounds, 419 F.2d 1381 (5th Cir. 1969), cert. denied, 397 U.S. 1022, 90 S.Ct. 1263, 25 L.Ed.2d 532 (1970); Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775 (1957); Rublee v. Stevenson, 161 S.W.2d 528 (Tex. Civ.App.—Dallas 1942, no writ hist.), as supporting its position. On the other hand, Ryder Truck asserts that, while one cannot recover attorney's fees when he attempts to enforce the guaranty agreement against the indemnitor itself, unless the agreement expressly so provides, a party can recover attorney's fees when he is required to instigate or defend an action against a third party which is covered by the indemnity agreement. In support thereof, it urges Fisher Construction Co. v. Riggs, 320 S.W.2d 200 (Tex.Civ.App.—Houston), reversed on other grounds, 160 Tex. 23, 325 S.W.2d 126, aff'd on remand, 326 S.W.2d 915 (Tex.Civ.App.—Houston 1959, no writ hist.). In *Fisher* it is stated that:

> Unless the indemnity agreement in question covers reasonable attorney's fees and expenses of defending the cause of action, Fisher would not be fully protected, indemnified and saved harmless. The expenses of litigating a claim indemnified against may be recovered whether the right of indemnity is implied by law or arises by implication.

320 S.W.2d at 211. After a detailed examination of the cases cited by these two parties, it is this Court's conclusion that the rule of law advanced by Ryder Truck is supported by the greater weight of authority, and such rule, therefore, will be applied in this instance. Sigmond Rothschild Co. v. Moore, 166 S.W.2d 744, 745 (Tex.Civ.App.—Beaumont 1942, writ ref'd); Martin-Brown Co. v. Auld, 34 S.W. 1050 (Tex.Civ.App.1896, writ ref'd). *See* Frommeyer v. L. & R. Construction Co., 261 F.2d 879 (3d Cir. 1958); B & G Electric Co. v. G. E. Bass & Co., 252 F.2d 698 (5th Cir.), cert. denied, 357 U.S. 931, 78 S.Ct. 1372, 2 L.Ed. 2d 1371 (1958); Gammage v. Weinberg, 355 S.W.2d 788, 794 (Tex.Civ.App.— Houston 1962, writ ref'd n. r. e.). As a consequence it is the opinion of this Court that Ryder Truck is entitled to be indemnified for all damages, including reasonable attorney's fees resulting from its defense against plaintiff's claim under the indemnity provisions of the stock purchase agreement.

### III.

### THE SUBLEASE AGREEMENT

■ On November 4, 1963, Mercury entered into a sublease agreement in the form of a letter contract, whereby it was to lease the freight terminal building and yard from Ryder System for the remainder of the term specified in the original lease agreement. It was indicated in that sublease that Mercury was to assume the position of lessee commencing on November 15, 1963. It was also indicated that Mercury was to take the premises "as is" and would return them at the expiration of the main lease in a condition satisfactory to the provisions of the original

lease.[4] Ryder System and Ryder Truck contend that by this agreement Mercury agreed to return the building and yard at the end of the lease in a condition that would satisfy all the covenants of the original lease agreement. In other words, it is their contention that Mercury was to make substantial repairs upon the premises during the two years that Mercury was to be in occupancy. They further assert that the lease agreement is clear and unambiguous and, therefore, not subject to construction by the use of parol evidence.

On the other hand, Mercury contends that the sublease agreement is by no means clear, that it is definitely ambiguous in that the agreement recites that Mercury will assume the position of lessee commencing on November 15, 1963, which is inconsistent with the further recitation that it will return the premises in a condition satisfactory to the terms of the original lease. It is asserted that under Ryder System's interpretation of the original lease agreement, Mercury would have assumed the responsibility for performance of the "repair" covenants from January 1, 1951. Mercury's contention is that the parties intended by the language "commencing November 15, 1963" that Mercury would assume the obligations for repairs that were necessary after the date that they commenced occupancy of the premises. It is Mercury's position that this Court should resolve the uncertainty by means of parol evidence presented by Mercury. Such parol evidence would indicate that the parties did not intend that Mercury would assume the obligation to perform all the covenants of the original lease and, therefore, lead to the conclusion that Mercury is not liable for any damages that occurred prior to November 15, 1963.

The general rule with regard to the construction of contracts, pursuant to Texas law, is that:

> If a written contract is so worded that it can be given a certain or defi-

---

4. November 4, 1963
Mr. Clarence Levi
President
Mercury Freight Lines, Inc.
Post Office Box 1624
Mobile, Alabama
RE: 400 Pinckney Street Terminal, Houston, Texas

Dear Mr. Levi:

This will confirm our telephone conversation today concerning your lease of the terminal property in Houston, Texas, formerly occupied by T.S.C. Motor Freight Lines, Inc., and Ryder Truck Lines, Inc., located at 400 Pinckney Street, Houston, Harris County, Texas, at a monthly rental of $900 payable in advance.

Occupancy is to commence on November 15, 1963, and the lease will extend through the balance of the term of the underlying Lease Agreement made between Freight Terminals, Inc., as Lessor, and T.S.C. Motor Freight Lines, Inc., as Lessee, dated as of June 30, 1950. A copy of the underlying Lease Agreement is enclosed.

It is understood and agreed that Mercury Freight Lines, Inc., will, commencing November 15, 1963, assume the position of "Lessee" in the enclosed Lease Agreement except that the provisions of Section IV with respect to the payment of rental will be modified as set forth above. Please make rental payments to Ryder Truck Lines, Inc., Post Office Box 2408, Jacksonville, Florida, commencing with the payment for the latter half of November, 1963, which will be in the amount of $450.

You have inspected the property recently, and it is understood that you are taking the premises except as we discussed regarding wiring "as is" and will return it at the end of the underlying main lease in a satisfactory condition pursuant to the terms of such main lease.

If the above sets forth our complete understanding, please sign and return to me a copy of this letter.

\*     \*     \*     \*     \*

Sincerely,
RYDER SYSTEM, INC.
By: /s/ Arthur H. Bernstein
Arthur H. Bernstein
Vice President and Treasurer
Approved and Accepted by
MERCURY FREIGHT LINES, INC.
By: /s/ Clarence Levi
President      11-21-63
Defendant's (Ryder Truck) Exhibit No. 9.

nite legal meaning or interpretation, it is not ambiguous. It follows that parol evidence is not admissible to render a contract ambiguous, which, on its face, is capable of being given a definite certain legal meaning. This rule obtains even to the extent of prohibiting proof of circumstances surrounding the transaction when the instrument involved, by its terms, plainly and clearly discloses the intention of the parties, or is so worded that it is not fairly susceptible of more than one legal meaning or construction.

Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977, 980 (1941).

■ After close scrutiny of the sublease agreement, it is this Court's opinion that the two paragraphs which recite the obligations of Mercury are inconsistent and are, therefore, not subject to a clear and unambiguous intrepretation. The jury found that two covenants had been breached: (1) the covenant to repair and (2) the covenant to return the premises in their original condition, excepting ordinary wear and tear. The established rule is that these two covenants are essentially the same. Fisher v. Temco Aircraft Corp., 324 S.W.2d 571, 575 (Tex.Civ.App.—Texarkana 1959, no writ hist.). Further, a limitation that applied to the "repair" covenant would also apply to the "return" covenant. 324 S. W.2d at 576. Therefore, to "assume the position of lessee" as of November 15, 1963, and to return "in a satisfactory condition pursuant to the terms of such main lease" are provisions which do not clearly reflect the obligations that the parties intended Mercury to assume.

■ When a contract is found to be ambiguous, or contains language of doubtful meaning, the intention of the parties should be ascertained. To accomplish this purpose, the entire writing should be examined and all of the provisions of the contract should be harmonized in such a manner so that none will be rendered without meaning. Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154, 157–158

(1951). It is also recognized that lease agreements are generally construed against the lessors who draft them. Sirtex Oil Industries, Inc. v. Erigan, 403 S.W.2d 784, 788 (Tex.1966). This rule appears to be even stronger when the draftor attempts to exempt himself from liability. E. g., Steadman Credit Co. v. Wade, 195 S.W.2d 765 (Tex.Civ.App.—Galveston 1946, writ dismissed); London & Provincial Marine & General Insurance Co. v. Sykes, 66 S.W.2d 382 (Tex. Civ.App.—San Antonio 1933, writ dismissed). Further, since the interpretation suggested by the defendants, Ryder Truck and Ryder System, would indicate that the agreement is, in effect, an indemnity contract, it should be acknowledged that indemnity agreements are also generally subject to a strict construction. See M. J. Delaney Co. v. Murchison, 393 S.W.2d 705, 710 (Tex.Civ.App. —Tyler 1965, no writ hist.); James Stewart & Co. v. Mobley, 282 S.W.2d 290, 294 (Tex.Civ.App.—Dallas 1955, writ ref.). It is also generally recognized that "courts will not construe a contract to mean that the parties have agreed to act contrary to what common sense and the circumstances obviously demand, unless the contract is explicit and clear in that meaning." Stool v. J. C. Penney Co., 404 F.2d 562, 566 (5th Cir. 1968).

■ To accept the interpretation of Ryder System and Ryder Truck would be to assume that the parties acted contrary to common business practice and business judgment. The Ryder group had leased the property for over 12 years, and Mercury was to sublease for a mere 2 year period. It would run counter to common sense to assume that the parties, particularly Mercury, would contract in the manner suggested by Ryder System and Ryder Truck in view of this time span differential. The only clear meaning that can be ascertained from the evidence presented in this case is that the parties intended that Mercury would assume the obligations of the "repair" covenant from November 15, 1963, to the end of the lease period. Therefore,

Mercury's liability is limited to the period commencing November 15, 1963.[5]

Furthermore, Mercury cannot be held to have contracted to assume the total liability for repairs pursuant to the provisions of the original lease, because the wording of such lease agreement is not sufficiently definite and clear so as to impose an obligation to indemnify Ryder System for the damages that Ryder System created by its own negligence and carelessness in the performance of its contractual obligations. *See* M. J. Delaney Co. v. Murchison, 393 S.W.2d 705 (Tex.Civ.App.—Tyler, 1965, no writ hist.). In *Murchison* it was held that in order for an indemnity agreement to incorporate the language of another agreement, the incorporation had to be so explicit that it could be clearly ascertained that the parties intended the other agreement to be controlling and the parties bound by its provisions. This Court is of the opinion that the reference in the sublease to "a satisfactory condition pursuant to the terms of such main lease" without precisely stating the obligations that Mercury was to assume, is not sufficiently definite to satisfy the above stated requirement. Therefore, it is this Court's conclusion that such attempted incorporation is not legally sufficient and must fail. *Compare* Jones v. El Paso Natural Gas Products Co., 391 S.W.2d 748, 754 (Tex.Civ.App.—Austin 1965, writ ref'd n. r. e.); Nelson v. Seidel, 328 S.W.2d 805, 808 (Tex.Civ.App.—Houston 1959, writ ref'd n. r. e.).

The jury found in favor of the plaintiff in answers to interrogatories as follows:

(1) That damage occurred to the plaintiff's premises during the occupancy and use by one or more of the defendants;

(2) That the damage to the premises found was the result of a violation or breach of the original lease agreement to return the premises to the lessor in as good repair and condition as when received; ordinary wear and tear and the obligation of lessor, as to the roof, exterior walls and structural defects under the lease excepted;

(3) That part of the damage to the premises found resulted from the occupancy by one or more of the defendants up to and including November 15, 1963;

(4) That the damages that resulted to the premises up to and including November 15, 1963 were as follows:

(a) the yard and parking area—$23,500;

(b) the air-conditioning system—$1,114;

(c) the terminal building—$20,490;

(5) That part of the damage to the premises found resulted from the occupancy by one or more of the defendants between November 15, 1963 and December 31, 1965;

(6) That the damages that resulted to the premises after November 15, 1963 were as follows:

(a) the yard and parking area—$3,900;

(b) the air-conditioning system—$186;

(c) the terminal building—$3,400; and

5. The intentions of the parties can be further ascertained by noting that Mercury had indicated to Ryder System prior to, and subsequent to, executing the sublease that the amount of the rental payments were quite essential to it in the negotiations. This is undoubtedly true, since Mercury is much smaller in terms of the amount of business transacted than Ryder Truck or Ryder System and could not expend more than the agreed $900 monthly rental payments for a freight terminal. It is also of interest to note that according to Ryder System's contention, although Mercury's president was to inspect the premises for the purpose of assuming the total obligations of the original lease agreement (including the covenant to repair), a large portion of the office facilities in the terminal building were boarded in such a manner that they could not be inspected. *See* Defendant's (Mercury) Exhibit No. 7. Additionally, it is important to note that Mercury had always demonstrated in its transactions after the sublease was executed that Ryder System was responsible for repairs necessitated prior to November 15, 1963. *See* Defendant's (Mercury) Exhibit Nos. 13, 19.

(7) That plaintiff was entitled to recover attorney's fees in the amount of $16,000 for the prosecution of this suit.

This Court therefore concludes from the law as applied to the evidence as to issues between the defendants that:

(1) Under the provisions of the original lease agreement Ryder Truck, as successor of the original lessee, is liable for the full amount of the damages owed to plaintiff including attorney's fees, as found by the jury;

(2) Under the terms of the guaranty agreement of 1959, Ryder System is likewise subject to the full liability for damages and plaintiff's attorney's fees as found by the jury; Ryder System, however, would be entitled to recover over against Ryder Truck for any liability which it sustained as a result of this guaranty agreement;

(3) Under the provisions of the stock purchase agreement of 1965, Ryder Truck, as assignee of International, is entitled to be indemnified by Ryder System for all damages it sustained as a result of the breach of the stock purchase agreement, including attorney's fees which it incurred in defending against plaintiff's cause of action; and

(4) Under the provisions of the sublease agreement, Ryder System is entitled to recover from Mercury for any damages that resulted to the premises after November 15, 1963, including payment of a proportionate share of plaintiff's attorney's fees awarded by the jury.

Therefore, this Court finds that plaintiff is entitled, pursuant to the verdict of the jury, to recover $52,590 in damages and $16,000 in attorney's fees or a total of $68,590 from defendants Ryder System and Ryder Truck. However, in view of the respective legal relationships existing between them the defendants are found by the Court to be subject to liability in the following manner:

(1) Ryder Truck is entitled to be indemnified by Ryder System for any damages it owed to plaintiff in this suit. Ryder Truck is also entitled to recover, from Ryder System, attorney's fees expended in defense of plaintiff's claim pursuant to the terms of the stock purchase agreement, such attorney's fees amount to $17,500 and are uncontested.

(2) Ryder System, however, is entitled to be indemnified, by Mercury, to the extent of $7,486 covering damages to the premises subsequent to November 15, 1963, as well as a proportionate share of the attorney's fees owed to plaintiff based upon Mercury's portion of the total amount of damages owed to plaintiff.

The above constitute the Court's Memorandum Opinion including Findings of Fact and Conclusions of Law. Counsel shall prepare and submit an appropriate Judgment within fourteen (14) days, reciting the jury verdict and the verdict of this Court and making appropriate provisions for interest and cost. Clerk shall notify counsel.