## MITCHELL'S INCORPORATED V. BEN FRIEDMAN

No. A-6101. Decided June 5, 1957.
Rehearing overruled July 17, 1957.
(303 S.W. 2d Series 775.)

*Morris I. Jaffe,* of Dallas, for petitioner.

*Rosenfield & Berwald* and *Max R. Rosenfield,* all of Dallas, for respondents.

MR. JUSTICE WALKER delivered the opinion of the Court.

This is a summary judgment case. The principal question is whether the original lessee in a building lease, who had assigned the leasehold estate with an agreement to remain responsible for the performance of all the lease terms, is obligated by the provisions of the lease to indemnify the lessor against liability for injuries received on the leased premises by a customer of the assignee.

Mitchell's Inc., petitioner, is the lessor, and Ben Friedman, respondent, is the original lessee. The lease in question, which was executed by these parties in 1949, provides for a term of ten years and covers a brick building on Lovers Lane in Dallas which petitioner had previously caused to be erected. Paragraph 7 of the lease reads as follows:

"7th. That the Lessor shall not be liable to Lessee or to Lessee's employees, patrons, or visitors, for any damage to person or property, caused by the act of negligence of any other tenant of said demised premises, or due to the building on said premises or any appurtenances thereof being improp-

erly constructed, or being or becoming out of repair, nor for any damages from any defects or want of repair of any part of the building of which the leased premises form a part, but the Lessee accepts such premises as suitable for the purposes for which same are leased and accepts the building and each and every appurtenance thereof, and waives defects therein and agrees to hold the Lessor harmless from all claims for any such damage."

In 1952 the lease was assigned by respondent to George Cokins, and the following year was transferred by Cokins to B. A. Brockles. Each of the assignments is covered by an agreement executed by petitioner, respondent and the assignee. These agreements provide inter alia that petitioner consents to the assignment, that the assignee assumes all of the obligations imposed upon the lessee by the terms of the lease, and that respondent shall remain bound for the performance of such obligations.

One Leonard Zobel, while in the building as a customer of Brockles, was injured when struck by plaster and lathing which fell from the ceiling. Zobel instituted a damage suit against petitioner, respondent, Brockles and the architect and contractors who constructed the building. The petition alleges that the air conditioning ducts, the plaster and lathing surrounding same, and the ceiling of the building were negligently constructed, that the defects were or should have been known to petitioner, respondent and Brockles, and that each of the defendants was negligent in various respects. Petitioner thereupon filed a cross action against respondent, Cokins and Brockles, asserting that under the provisions of the lease and the subsequent agreements executed by the parties, said three defendants are obligated to hold petitioner harmless from any damages which might be recovered by Zobel.

The trial court concluded that respondent could not be liable to Zobel under the facts alleged, and accordingly dismissed plaintiff's suit as to respondent. The propriety of this order has not been questioned. Respondent then filed a motion for and was granted a summary judgment on petitioner's cross action, and the Court of Civil Appeals affirmed. 294 S.W. 2d 740. Since respondent agreed to remain bound for the performance of all the provisions of the lease, there is no merit in his contention that he is merely a surety for the payment of the rent. The question then is whether the indemnity agreement covers Zobel's claim. We have concluded that it does, and con-

sequently that respondent was not entitled to a summary judgment.

It will be noted that Zobel was a patron of Brockles, but was not an employee, patron or. visitor of respondent, at the time he was injured. Respondent contends that the provisions of paragraph 7 of the lease, when strictly construed against petitioner as required by the rule of strictissimi juris, extend only to claims for damages sustained by respondent or his employees, patrons or visitors.

According to the opinion in Smith v. Scott, Texas Civ. App., 261 S.W. 1089 (no writ), the cardinal rule for the construction of indemnity contracts is that the indemnitor is entitled to have the undertaking strictly construed in his favor. The only authority there cited is 31 C.J. p. 427, Sec. 19, which reads as follows:

"After the intention of the parties or the scope of the indemnitor's undertaking has been determined by the ordinary rules of construction, the rule of strictissimi juris applies, that is, that the indemnitor is entitled to have his undertaking as thus determined strictly construed, and that it cannot be extended by construction or implication beyond the terms of the contract, especially where the contract was prepared by the indemnitee. * * * "

The rule as announced in the Smith case is quoted in Texas Jurisprudence and has been reiterated in subsequent opinions. 23 Texas Jur. Indemnity, Sec. 7, p. 526; International-Great Northern R. Co. v. Lucas, Texas Civ. App., 70 S.W. 2d 226 (reversed 128 Texas 480, 99 S.W. 2d 297); Kramer v. Linz, Texas Civ. App. 73 S.W. 2d 648 (no writ); Fidelity & Deposit Co. of Maryland v. Reed, Texas Civ. App., 108 S.W. 2d 939 (no writ); Rublee v. Stevenson, Texas Civ. App., 161 S.W. 2d 528 (no writ). And in the related field of suretyship, we have said by way of dictum that the contract will be "strictly construed" so as to impose on the surety only such obligations as clearly come within its terms, and will not be extended by construction or implication. Standard Acc. Ins. Co. v. Knox, 144 Texas 296, 184 S.W. 2d 612.

■ It is somewhat misleading to say that an indemnity agreement must be strictly construed in favor of the indemnitor and against the indemnitee. Although the distinction has not been frequently noted, the doctrine of strictissimi juris is not a rule

of construction but is a principle of substantive law which is applicable after the intention of the parties has been ascertained by ordinary rules of construction. See note to Houston Fire & Casualty Ins. Co. v. E. E. Croker, General Contractor, 5th Cir., 217 Fed. 2d 906; Covey v. Schiesswohl, 50 Colo. 68, 114 Pac. 292; Marshall-Wells Co. v. Tenney, 118 Ore. 373, 244 Pac. 84, 45 A.L.R. 1382; American Chain Co. v. Arrow Grip Mfg. Co., 134 Misc. Rep. 321, 235 N.Y.S. 228; 42 C.J.S., Indemnity, Sec. 8, p. 574. In determining the rights and liabilities of the parties, therefore, their intention will first be ascertained by rules of construction applicable to contracts generally. At this point neither party is favored over the other simply because their agreement is one of indemnity. After the intention of the parties has been determined, however, the doctrine of strictissimi juris applies and the liability of the indemnitor under his contract as thus interpreted will not be extended beyond the terms of the agreement.

■ Respondent would have us say that even after the assignment of the leasehold estate, the stipulations of paragraph 7 of the lease continued to cover only the claims of respondent and his patrons, employees and customers. In each of the consent agreements executed by petitioner and respondent, the assignee assumed all of the obligations imposed upon the lessee by the terms of the lease and respondent agreed to remain bound for the performance of such obligations. Although the lease purports to define the rights and duties of the lessor and lessee named therein, the parties clearly did not intend for petitioner's position to be altered or impaired in any way by the assignments. They contemplated instead that the assignee would for all practical and legal purposes step into the shoes of the original lessee. To sustain respondent's contentions, it would be necessary to say that after assignment of the lease, the word "lessee" wherever it appears in the contract continues to refer only to the person of the original lessee. It seems clear to us that to give the word this narrow meaning would frequently defeat rather than give effect to the intention of the parties.

The present lease provides that the lessee shall not place any signs on the premises without the approval of the lessor. It is also stipulated that upon termination of the lease for default in the performance of any of its covenants, the lessor may enter and remove the lessee's property therefrom. We cannot believe that the parties intended that an assignee would be entitled to place signs on the premises at will or would not be subject

to having his property removed by the lessor upon termination of the lease.

If the word "lessee" in paragraph 7 is taken to mean only the person of the original lessee after his interest in the lease has been sold, then for all practical purposes the indemnity agreement ceases to have any meaning or effect. The original lessee and his employees, patrons and visitors would usually have no occasion to be on the premises, and the agreement would not extend to claims asserted by the assignee or his employees, patrons or visitors. An assignment of the lease would thus relieve both the original lessee and his assignee of any real obligation under this paragraph. These important provisions certainly were not intended to be effective only so long as the lease was owned by respondent. We think then that the word "lessee" as used by the parties in paragraph 7 means the owner of the leasehold estate and does not refer merely to the person of the original lessee. After the last assignment, therefore, both Brockles and respondent were obligated to hold petitioner harmless from all claims of Brockles and his employees, patrons and visitors for damage resulting from any of the causes specified in the lease.

Respondent also relies on the rule that an indemnity agreement will not protect the indemnitee against the consequences of his own negligence unless the obligation is expressed in unequivocal terms. The contract in James Stewart & Co. v. Mobley, Texas Civ. App., 282 S.W. 2d 290 (wr. ref.), provided for indemnity against liability for injury or death to any person resulting from the use by the indemnitor or its employees of hoists belonging to the indemnitee. It was held that the agreement covered the claim of an employee of the indemnitor who, while using one of the hoists, was injured as a result of the negligence of an employee of the indemnitee. The court recognized that the liability of an indemnitor cannot be extended beyond the express terms of the contract, but said that since the injury resulted from the use of the hoist by an employee of the indemnitor, it was clearly within the terms of the agreement.

■ It is not necessary, therefore, for the parties to say in so many words that they intend to protect the indemnitee against liability for negligence. An obligation to hold harmless from claims, liability or damage resulting from a specified operation or instrumentality will be enforced in accordance with its terms even though the indemnitee may thereby be relieved of

the consequences of his own negligence. See also Houston & T. C. R. Co. v. Diamond Press Brick Co., 111 Texas 18, 222 S.W. 204, 226 S.W. 140. If Zobel's injuries were caused by improper construction, defects or want of repair of the building as the allegations of the petitioner seem to indicate, his claim falls within the express provisions of the indemnity agreement and petitioner is entitled to insist that respondent discharge his obligations thereunder.

It will be noted that paragraph 7 of the lease also mentions damage caused by the negligence of another tenant of the demised premises. An entirely different question would be presented if indemnity were sought against a claim for damage caused by the negligence of the lessor concurring with that of another tenant.

The foregoing conclusions require that the case be remanded to the district court for trial, but we do not mean to infer that respondent will necessarily be liable for any amount. The record shows that the main suit was settled for $9,000.00 after respondent's summary judgment was granted. Judgment was thereupon entered in favor of Zobel and against petitioner, Brockles, the architect and contractors, jointly and severally, for the amount of the settlement. Cokins, who is alleged to be a resident of South Dakota, is not mentioned in the judgment, apparently because the court never acquired jurisdiction of his person.

■ By denying any obligation under the indemnity agreement and obtaining his summary judgment, respondent waived any right to insist upon a judicial determination of petitioner's liability to Zobel or to participate in the settlement. He cannot be held liable, however, for a purely voluntary payment to Zobel. Since the suit apparently was settled without respondent's approval, the judgment therein is not conclusive as to him. The question of petitioner's liability to Zobel will thus be an issue when the present suit is tried. Having settled the claim without obtaining a judicial determination of its liability, petitioner assumed the risk of being able to prove the facts which might have rendered it liable to the plaintiff as well as the reasonableness of the amount which it paid. It will be necessary, therefore, for petitioner to establish that from its standpoint the settlement was made in good faith and was reasonable and prudent under the circumstances. See Luton Mining Co. v. Louisville & N. R. Co., 276 Ky. 321, 123 S.W. 2d 1055; Thermopolis Northwest

Electric Co. v. Ireland, 10 Cir., 119 Fed. 2d 409; St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U.S. 173, 26 Sup. Ct. 400, 50 L. Ed. 712.

No question is raised and we express no opinion as to the effect, if any, which the obligations of Cokins and Brokles might have on the rights of petitioner and respondent.

The judgments of the courts below are reversed, and the cause is remanded to the district court.

Opinion delivered June 5, 1957.

Rehearing overruled July 17, 1957.