**MARYLAND CASUALTY COMPANY,**
Appellant,

v.

**R & L CONSTRUCTION COMPANY et al.,**
Appellees.

No. 3800.

Court of Civil Appeals of Texas.

Eastland.

May 17, 1963.

Rehearing Denied June 7, 1963.

Thompson, Coe, Cousins & Irons, Dallas, for appellant.

Henry Klepak, Dallas, for appellee.

WALTER, Justice.

Maryland Casualty Company filed suit again R & L Construction Company upon an indemnity agreement. Based on a verdict, judgment was rendered that Maryland take nothing and it has appealed.

R & L Construction Company contracted with Ross and Levy, Inc. to erect a building. Maryland Casualty Company issued its bond guaranteeing performance. R & L executed an indemnity agreement to Maryland in connection with its application for a performance bond. Service Bureau Corporation, the tenant, was assigned the performance bond in consideration of its acceptance of the premises as lessee of

Ross and Levy, Inc. Service Bureau made a claim against Maryland under the bond contending that R & L had failed to complete the building according to plans and specifications. Maryland paid Service Bureau $4,000.00 on this claim. Maryland sought to recover the $4,000.00 from R & L under the following indemnity agreement:

"The undersigned will at all times indemnify and keep indemnified the Company, and hold and save it harmless from and against any and all liability for damages, loss, costs, charges and expenses of whatever kind or nature (including counsel and attorney's fees) which the Company shall or may, at any time, sustain or incur by reason or in consequence of having executed the bond(s) herein applied for, or any and all other bonds executed for us or at our instance and request; and will pay over, reimburse and make good to the Company, its successors and assigns, all money which the Company or its representatives shall pay, or cause to be paid, or become liable to pay, by reason of the execution of any such instruments, or in connection with any litigation, investigation or other matters connected therewith, such payment to be made to the Company as soon as it shall have become liable therefor, whether the Company shall have paid out such sum, or any part thereof, or not. In any accounting which may be had between the undersigned and the Company, the Company shall be entitled to credit for any and all disbursements, in and about the matters herein contemplated, made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether such liability, necessity or expediency existed or not, and vouchers or other evidence of such disbursements shall be taken as conclusive evidence against the undersigned of the fact and extent of the undersigned's liability to the Company."

Concerning the rule of construction to be applied in construing an indemnity contract, our Supreme Court in the case of Mitchell's Inc., v. Friedman, 157 Tex. 424, 303 S.W.2d 775 at page 777, said: "It is somewhat misleading to say that an indemnity agreement must be strictly construed in favor of the indemnitor and against the indemnitee. Although the distinction has not been frequently noted, the doctrine of strictissimi juris is not a rule of construction but is a principle of substantive law which is applicable after the intention of the parties has been ascertained by ordinary rules of construction."

Maryland called upon R & L to make payment to Service Bureau. R & L refused and denied liability. Maryland made a settlement with Service Bureau for $4,000.00. If it acted in good faith, Maryland had the right to make a reasonable settlement. Having made the settlement, Maryland assumed the responsibility of showing that the settlement was made in good faith and that it was a reasonable and prudent settlement. Gulf, Colorado & Santa Fe Railway Company v. McBride, 159 Tex. 442, 322 S.W.2d 492 (Sup.Ct.). Good faith is an ordinary term and its meaning is presumed to be understood by men of ordinary intelligence. Dunning v. Badger, Tex.Civ.App., 74 S.W.2d 151 (Dismissed).

We recite the pertinent testimony of the witnesses. Mr. W. P. Bostick testified he worked for Service Bureau, which is a wholly owned subsidiary of International Business Machine Corporation, located on North Central Expressway in Dallas. Other than as a local representative of the company, he had nothing to do with the negotiations of the lease executed by his company and Ross and Levy, Inc. Service Bureau made a claim against Maryland, under the bond, asserting that R & L had failed to brick the south wall, failed to

install proper conduit for electrical wiring and failed to waterproof certain portions of the buillding. On cross-examination, he testified that he did not have any instrument of any kind or character to show the jury that the plans and specifications called for a brick wall on the south side. He had nothing to do with signing the lease.

Hon. Paul Carrington testified that he was a member of the law firm of Carrington, Johnson and Stephens and had practiced in Dallas since 1919 and that he represented Service Bureau in presenting their claim to Maryland under its performance bond.

Vernon Koger, an adjuster with Maryland Casualty Company, testified that he worked on Maryland's claim against R & L. On cross-examination he testified that during his investigation he did not see an agreement in writing specifying that the south wall was to be a brick wall. He never did see any plans or specifications that called for a brick wall on the south side. The principal object of his investigation was to find out for his company whether it should recognize the claim of Service Bureau, and determine whether it would be advisable for his company to settle. He was asked the following question: "Now, in order to give your company some advice as a result of your investigation, you would want to see whether or not there was a contract that obligated the putting up of a brick wall or waterproofing a wall or imbedding this electrical wiring in the concrete, wouldn't you?" And he answered, "Yes, sir." "You didn't do that, though, did you?" and he answered, "I do not recall if I did, or not."

J. E. Hall, Jr., claims division manager for Maryland in the Dallas area, testified that it was doubtful whether he could collect the $4,000.00 paid Service Bureau Corporation from Mr. Ross and Mr. Levy, because they told him they were broke. He testified: "I don't see why I have to consider getting into a lawsuit which is going to cost several thousand dollars more to

defend when I was having no cooperation from them is something."

Mr. Cerf Ross, one of the appellees, testified that he was a licensed architect; that plaintiff's Exhibit No. 9 was a blueprint, only a check set of prints and not signed. He then introduced defendants' Exhibits 2 and 3, which were two pages of blueprints he described as a contract set of blueprints which showed the floor plans, the basement plan and the first and second floor plan, as well as the mechanical, the wall sections and the stairway sections. These two sheets of blueprints constituted the contract set that were initialed by J. S. Karlton, the representative of Service Bureau. Maryland objected to these prints as follows: "If Your Honor please, we are going to object to the introduction of Defendants' Exhibits 2 and 3 for the reason that the issue is not what the actual plans show; the issue is the good faith of Maryland Casualty in making payment; until such time it is shown that these were in fact called to the attention of Maryland Casualty Company, at the time the negotiations were going on, it would be hearsay, they would be completely irrelevant and immaterial to any issue before this Court." Service Bureau occupied about 60 percent of the building and he occupied about 28 or 30 percent and another firm occupied about 10 percent of the building. He was handed plaintiff's Exhibit No. 4 which was a letter from Mr. Bostick to Cerf Ross Associates dated December 18th, 1957, in which letter Mr. Bostick in behalf of Service Bureau Corporation accepted the premises subject to 8 exceptions. He complied with all of the 8 requiements described in the letter. There is nothing in the letter requiring a brick wall on the south. He explained to Mr. Hall, claims manager for Maryland, that he had complied with all of Service Bureau's requirements. He had several conversations with Mr. Hall and on one occasion Hall informed him there was great pressure on him to settle this claim and that Maryland had been threatened with

a law suit and "The fact they were doing business with IBM and SBC, and that they just had to make a settlement of this thing, and I took the position that I didn't feel that there was anything to settle; they were tenants, we did everything they asked us to do, and I felt no further obligation to them." That Mr. Karlton told him in his letter of January 21, 1958, being defendants' Exhibit No. 1, that it would not be necessary to install the brick wall; that as a result of this building deal he was forced into bankruptcy but did not list this claim in the bankruptcy proceedings. Service Bureau moved into the building in December '57. The prints introduced by R & L and initialed by Ross and Mr. Karlton do not indicate that there was to be a brick wall. On this job he was the architect, contractor and owner of the building. He actually completed and did all the things that were demanded of him in Mr. Bostick's letter of December 18, 1957, and a lot more. Mr. Ross further testified that the parties did not enter into a formal written contract for the construction of this building. No formal specifications were drawn. The lease was executed on June 28, 1957, which was approximately two months before any plans were submitted for approval.

In view of the jury's finding that Maryland did not act in good faith, the burden is upon Maryland to show that the record conclusively demonstrates that it acted in good faith. We have concluded that the testimony set forth above, constitutes some evidence of probative force to support the jury's finding that Maryland did not act in good faith.

In answer to a special issue the jury found that Service Bureau intended to waive any right it asserted to have the south wall bricked. Maryland contends there was no evidence or insufficient evidence to sustain such a finding and as a matter of law such finding was not binding on it. We have concluded that the only issue in this case is whether Maryland compromised the claim in good faith. We have also concluded that the appellant has not shown that the submission of the issue on waiver was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. Rule 434 T.R.C.P.

We have examined and considered all the evidence and conclude that the findings of the jury are not against the great weight and preponderance of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

We have considered all of appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.