The ATCHISON, TOPEKA & SANTA FE RAILWAY CO., Appellant,

v.

F. L. DENTON, Appellee,

v.

CITIES SERVICE OIL CO., Third Party Defendant, Appellant, and Appellee as to Appellant, the Atchison, Topeka & Santa Fe Railway Company.

No. 8186.

Court of Civil Appeals of Texas, Amarillo.

Dec. 30, 1971.

Rehearing Denied Jan. 31, 1972.

---

**824**

against his employer, The Atchison, Topeka and Santa Fe Railway Company. The court also granted the railway company judgment over and against Cities Service Oil Company, Third Party Defendant, for contribution under an indemnity agreement, for one-half of the total amount of the judgment awarded to the employee-appellee against the railway company. Affirmed.

F. L. Denton was employed by the railway company as a switchman. On March 6, 1968, while working as a member of a switching crew, Denton was in the process of delivering some tank cars to the loading racks of Cities Service Oil Company when he became unconscious, or "passed out," fell and struck his head on some pipe in the rack, resulting in injuries for which he was awarded damages. After Denton instituted the suit against the railway company seeking damages for his injuries, the railway company was permitted to implead Cities Service Oil Company as Third Party Defendant, seeking indemnity, and alternatively, contribution, under the terms of its contract with Cities Service regarding the installation, maintenance and use of a railway track from the main line to the petroleum loading rack of Cities Service near Pampa, Texas. The contract contains certain provisions regarding indemnification which are quite significant in the disposition of this case. Alternatively, the railway company asserted the right of full indemnity against Cities Service under the common law.

Gibson, Ochsner, Adkins, Harlan & Hankins, A. B. Hankins, Amarillo, for appellant.

Merchant & Barfield, Amarillo, Schattman, Mock & Guthrie, Denning Schattman, Fort Worth, Smith, Teed, Wade & Waters, Bill Waters, Pampa, for Cities Service.

ELLIS, Chief Justice.

In this action brought under the Federal Employers' Liability Act, the trial court awarded judgment for personal injuries sustained by the plaintiff, F. L. Denton,

The trial was to a jury, and, by its answers to special issues, it found negligence against both the railway company and Cities Service, that such negligence was a cause of the plaintiff's injuries, and that no act of negligence on the part of either party was the sole proximate cause of the employee's injuries. Upon the verdict, judgment was entered by the trial court awarding damages in favor of the employee against the railway company for the sum of $80,000, and, although the railway company urged its claim for full indemnity, judgment in favor of the railway company

was granted over and against Cities Service for contribution of one-half of the total sum of the judgment rendered for the employee's injuries. Both the railway company and Cities Service have perfected appeals to this court, each challenging the judgment entered in favor of Denton. The railway company further contends that it is entitled to full indemnity against Cities Service, while Cities Service challenges the judgment granted in favor of the railway company against Cities Service for contribution of one-half of the sum of Denton's recovery.

In its appeal, predicated upon three points of error, the railway company contends that the trial court erred (1) in refusing to admit into evidence the Santa Fe Form 1421 (Report of Injured Person), filled out by Denton, for impeachment purposes or as a declaration against interest; (2) in refusing to grant the railway company's motion for instructed verdict made after the plaintiff had rested; and (3) in refusing to grant the railway company judgment for full indemnity against Cities Service under the findings of the jury and the contract between the parties. Cities Service, the Third Party Defendant, joins the railway company in urging its first two points of error. Denton has replied by counterpoints to such two points and disclaims any interest in the matters in controversy between the railway company and Cities Service. Cities Service urges its separate third point of error, contending that the court erred in entering judgment in favor of the railway company against it for one-half of the amount of the recovery awarded to Denton. Also, Cities Service by its Counterpoint One addressed to the third point of the railway company, presses the contention that the court did not err in refusing to grant to the railway company full indemnity against Cities Service on the verdict of the jury and the contract between the parties, to which contention the railway company has submitted its separate reply.

The railway company and Cities Service insist in their first point that the court erred in refusing to admit into evidence the employee's injury report (Santa Fe Form 1421) which was offered for impeachment purposes, or alternatively, as a declaration against interest. The report form dated March 25, 1968, concerning the injury which occurred on March 6, 1968, was filled out and witnessed with the answers to the printed questions being in the handwriting of Denton, the employee. The portions of the report deemed pertinent here are:

"2. State what was the cause of your injury and what you were doing at the time it occurred. State fully.

"Answer: Inhailing (sic) of L. P. Gas Fumes. I was spoting (sic) cars to Load at the Cities Service Rack. Located near Cabot Pampa Plant.

"3. Was there any defect in tracks, cars, engine, tools, machinery or other appliances or place where you were working to cause the accident? If so, what, and give your reasons.

"Answer: No.

"4. Was there any carelessness on the part of the company or any one on the company's employ to cause the accident? If so, who, and give your reasons.

"Answer: No."

The appellee objected to the admissibility of the report on the grounds that the answers to the questions were opinions and mere conclusions on the part of the employee, while the appellants insisted that although such answers may have been conclusions or opinions, appellants were entitled to have the same admitted for impeachment purposes or as declarations against interest.

From a review of the evidence, we have concluded that the trial court did not err in excluding the evidence. Initially, it does not appear that the testimony

given by the employee during the trial conflicted in any material respect with the answers previously given to the above quoted portion of Form 1421. In response to detailed questions, the employee, as a witness during the trial, gave testimony that a gas leak had been discovered and that he had inhaled some gas that caused him to pass out, and that neither the railroad equipment, the condition of the roadbed, nor the conduct of other employees with whom he was working were related to his fall and injuries. Thus, the answers given to detailed questions in the trial of the case were not inconsistent with the answers given in the report form, and the admission of the answers on the report form, consisting of mere opinions and conclusions, set forth no facts upon which he might be impeached. See 1 McCormick and Ray, Texas Law of Evidence, § 697 (2d ed. 1956). Further, the specific question asked the witness during the trial as to whether any carelessness on the part of the railway company had caused the injury was not a proper question. This type of evidence as well as that contained in the report form appears to be superfluous and improper, for the jury could, from testimony covering all of the essential details, make the ultimate determination as to whether the railway company was careless. San Antonio Public Service Company v. Alexander, 280 S.W. 753 (Tex.Civ.App. 1926). Conclusions of this nature invade the province of the jury and should not be admitted. Bell v. Bell, 248 S.W.2d 978 (Tex.Civ.App.—Amarillo 1952, writ ref'd n. r. e.); Citizens' Railway Co. v. Robertson, 41 Tex.Civ.App. 324, 91 S.W. 609 (writ dism'd). Further, it is well established in Texas that even if the answers on the form were, in fact, inconsistent with testimony given during the trial, evidence of this character cannot be used as substantive evidence of the facts stated. 1 McCormick and Ray, Texas Law of Evidence, § 688 (2d ed. 1956). Also, in Texas, the rule is generally applied that broad statements of a witness dealing with the general merits of the case are not admissible when in testimony during the trial the witness has made specific and detailed assertions on the same subject matter. Houston E. & W. T. Ry. Co. v. Adams, 44 Tex.Civ.App. 288, 98 S.W. 222 (1906, no writ).

Since the record discloses that the testimony of Denton given during the trial was not inconsistent with the statements given by him in the report of injury form, the jury was in as good a position as the witness to draw inferences or form conclusions on matters which were properly for its ultimate determination. In view of the foregoing, we perceive no error in the trial court's exclusion of the report of injury, and we, therefore, overrule appellants' first point of error.

Appellants further contend that the trial court erred in failing to grant the motion for instructed verdict made after the plaintiff had rested. At this juncture, it should be pointed out that appellant, Cities Service joined in the railway company's motion for instructed verdict. Cities Service adopted the argument and authorities of the railway company under its second point with the exception of the assertion that plaintiff's testimony "completely eliminates any negligent conduct on the part of the employees of the railway company."

It is well established that after the trial court has overruled the defendants' motions for instructed verdict made when the plaintiff rested, and defendants then proceeded with the introduction of evidence, they thereby waived the motions. It has been likewise held that if, after such waiver, the evidence from all sources is sufficient to sustain the plaintiff's position, a defendant cannot prevail in the contention that the trial court should have sustained the motion for instructed verdict. Texas Construction Rentals, Inc., v. Harrison, 410 S.W.2d 482 (Tex.Civ.App.—Waco 1966, writ ref'd n. r. e.); Citizens' Mutual Life Insurance Ass'n v. Miles, 77 S.W.2d 717 (Tex.Civ.App.—Waco 1935, no writ). Thus, in view of the court's de-

nial of the motions for instructed verdict it is proper that the record be reviewed under the "no evidence" rule. Orkin Exterminating Company v. Schorsch, 436 S.W. 2d 422 (Tex.Civ.App.—San Antonio 1968, no writ); Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965). Further, in considering "no evidence" points, the evidence is to be considered in the light most favorable to the jury's findings, considering only the evidence and reasonable inferences which support the findings and rejecting the evidence and reasonable inferences which are contrary to the findings. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914).

Denton takes the position that there was evidence to sustain the jury's verdict finding negligence and causation against the appellants. Denton was spotting tank cars at the Cities Service LP rack which ran east and west. The rack is approached by the railway switching crew from the west as it comes off the track mainline. As the plaintiff was in the process of spotting tank cars, he noticed an iceball on the valve of the southeast loading pipe about 20 feet above the ground, and also on the turnbuckle device where the cars were loaded. This ball of ice was observed at the east end of the rack where he had spotted one of the tank cars. He then moved to the west end of the rack where he spotted a second car. Denton testified that while he was performing his functions preparatory to the spotting of the third and last tank car, he passed out suddenly and fell at a point approximately 300 feet west of the ball of ice previously observed at the east end of the rack.

According to the expert testimony of L. A. Stern, a chemical engineer, an iceball of the type observed by Denton was caused by leaking LP gas and that the formation of such an iceball is indicative of a leak at that particular point. The expert testimony sets out the hereinafter described characteristics of LP gas. When it is released into the atmosphere it changes from a liquid to a gaseous state. It makes this change most readily when the temperature is 50° Fahren-

heit or less. It is dangerous because such gas, in its natural state, is invisible, tasteless and odorless. In its gaseous state, it is heavier than air and when released into the atmosphere it falls to the ground and will move in the direction of a breeze or other force which may be applied to it. It is not toxic, but manifests its characteristics as an asphyxiant by reason of the fact that when released into the atmosphere in sufficient concentration it completely displaces the atmosphere as it moves through, leaving no oxygen or nitrogen.

On the occasion in question there was indication of leakage of LP gas into the atmosphere as evidenced by the existence of the iceball. Also, there was testimony that on the day in question, it was somewhat cloudy, the temperature was about 50° Fahrenheit, and the wind was blowing generally from east to west (from the situs of the leak toward the immediate area in which Denton was working) at the rate of 3 to 5 MPH. Since the gas was invisible, odorless and tasteless, and moving along the ground, Denton would have no warning of the approach of such gas with asphyxiating characteristics by reason of the displacement of the oxygen. Under such circumstances the employee, Denton, could suffocate or "pass out" and fall without having been aware of the movement of the gas into the area where he was standing at the time. There was testimony that the employee had never passed out before, or had any previous serious illness, and various tests, including an EKG, indicated that he was normal. There was medical opinion evidence to the effect that his injuries were apparently caused by the fall.

The knowledge of the dangers of the qualities of the gas in question is imputable to Cities Service, the producer, and to the railway company as the carrier. It is indicated that Cities Service was aware of its dangerous propensities as evidenced by its practice of adding a malodorant to the gas after it was loaded into the tank cars in order to evidence a means of detection of the existence of the gas in the event it were

released into the atmosphere. The knowledge of any delinquency of Cities Service is imputable to the railway company by reason of the obligations of the railway company to its employee. Under the Federal Employers' Liability Act, the railway company has a nondelegable duty to provide the employee a reasonably safe place to work, even in a situation involving his going to the premises of a third party over which it has no control. Shenker v. Baltimore & Ohio Railroad, 374 U.S. 1, 83 S.Ct. 1667–1672; 10 L.Ed.2d 709 (1963).

It is recognized that the evidence here is relatively circumstantial, and the weight of the evidence, whether direct or circumstantial, is entirely a matter for determination by the jury. 1 McCormick & Ray, Texas Law of Evidence, § 1481 (2d ed. 1956). A review of all the circumstances, which to some extent have been detailed above, indicates support of a reasonable inference of the existence of the odorless, tasteless gas with asphyxiant characteristics in the area where Denton was standing. There is evidence to the effect that the gas, under the combination of all the circumstances, could have acted as an asphyxiant, and that on the occasion in question, the evidence strongly indicates that Denton's body reacted and was affected as would be anticipated for a person in the presence of such gas in sufficient concentration to act as an asphyxiant. All of these matters circumstantially tend to support negligence and causation with respect to Denton's injuries.

Appellants contend that a finding of proximate cause cannot be sustained unless there is proof of cause in fact and foreseeability. Such a contention is a valid one and would be controlling in the absence of competent evidence to the contrary. Further, the courts can take judicial knowledge of the inherently dangerous nature of LP gas. Smith v. Koenning, 398 S.W.2d 411 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.). Also, foreseeability not being a subjective test, a party is charged with the foreseeability that the existence of asphyxiant gas in an area where persons

regularly work can, coincident with the required combination of conditions, result in a situation or condition under which a person could be overcome by the asphyxiant. Additionally, by reason of the use of the malodorant by Cities Service, everyone who comes in contact with the gas after loading until consumption has the benefit of the malodorant to warn of its existence. The only persons who would come in contact with the gas in its raw and odorless state are employees of the carrier when they come in contact with the gas by reason of leaks after the tank car loading operation has ceased. Causation and foreseeability can be established by circumstantial evidence and the jury was entitled to draw inferences from the circumstantial evidence presented here to establish the required causal connection between the leak and the employee's injuries. We hold, therefore, that the evidence in this cause, although circumstantial in character, is of sufficient probative force, when reviewed under the established "no evidence" standard, as required, to sustain the jury's findings of negligence and causation against the railway company and Cities Service. Accordingly, we overrule appellants' contention that the court erred in overruling their motions for instructed verdict.

The railway company "restates" its Third Point in the following language:

"The trial court erred in refusing to give defendant and third party-plaintiff railway company judgment for full indemnity against third party-defendant, Cities Service, on the verdict of the jury and the contract between the parties."

Under the pleadings of the railway company appearing in the transcript, it sought full indemnity for any judgment in favor of the plaintiff over and against third party-defendant, Cities Service, on the basis of (1) the terms of the indemnity contract between the railway company and Cities Service, and alternatively, (2) allegations of common law negligence. The first paragraph of the First Amended Answer of

Cities Service discloses that Cities Service specially excepted to the pleading of the railway company on the alleged common law negligence. Cities Service insists that its special exception was sustained by the court and that counsel for the railway company was aware of and recognized such ruling sustaining the special exception and sought relief in the trial both by pleadings and proof offered solely upon its contract with Cities Service and not under the common law. The original Transcript filed with the Court of Civil Appeals on April 2, 1971, did not contain a written order of the court sustaining such special exception. The order of the court overruling the amended motions for new trial of the railway company and Cities Service, entered on February 3, 1971, was included in the original transcript. On April 30, 1971, the trial court entered an order sustaining the special exception contained in the First Amended Original Answer of Cities Service and, also, on April 30, 1971, ordered the filing of a Supplemental Transcript containing the order signed April 30, 1971, sustaining the special exception. The Supplemental Transcript was filed on May 13, 1971. The railway company then filed its motion to strike such Supplemental Transcript on May 19, 1971. Under the provisions of Rule 90 of the Texas Rules of Civil Procedure such special exception must have been called to the attention of the trial court. The burden is upon the party urging the exception to have the record affirmatively show that the exception was called to the attention of the court and acted upon or it is deemed waived. When the record does not show the presentation of and the ruling upon the special exception prior to the rendition of judgment, the appellate court cannot consider the matter. McKnight v. Renfro, 371 S.W.2d 740 (Tex.Civ.App.—Dallas 1963, writ ref'd n. r. e.). The fact that statements made by counsel in reference to the matter are contained in the statement of facts, absent any direct statement made or ruling recited therein by the court itself, do not, in our opinion, sufficiently comply with the requirements of the applicable rules. After the expiration of 30 days from the date of rendition of the order overruling the amended motions for new trial, the court lost jurisdiction of the case other than to correct clerical errors. Section 5, Rule 329b, Texas Rules of Civil Procedure; Boyd v. Gillman Film Corp., 447 S.W.2d 759 (Tex.Civ.App. —Dallas 1969, writ ref'd n. r. e.); Eli Lilly & Company v. Casey, 457 S.W.2d 82 (Tex. Civ.App.—Eastland 1970, no writ). It does not appear that the entry of an order in its entirety sustaining a special exception which serves to limit the scope of the pleading and proof in a trial should be considered as a purely clerical correction rather than a judicial action. We, therefore, grant the motion to strike the Supplemental Transcript. We shall consider, however, all matters contained in the original transcript as well as all matters contained in the statement of facts and exhibits, along with the briefs submitted.

In the third point of the Cities Service brief it is insisted that the railway company has waived its right to recovery under the contract between the railway company and Cities Service. At the conclusion of the introduction of the evidence, after all parties had closed and before the case was submitted to the jury, Cities Service requested and was granted permission to file a trial amendment pleading waiver of the provisions of the agreement between the parties regarding indemnification and also requested permission to reopen its case. The hearing on the matter of waiver was heard by the court without a jury several days after two sets of issues had been submitted to the jury, the jury verdict returned on both sets of issues and the discharge of the jury. The contentions of the parties and the trial court's disposition of the matter of waiver will be further discussed after our review of the evidence, including the contractual provisions in question, and the jury's answers to the various issues submitted.

The railway company had previously entered into a written contract with Cities Service (designated as Industry in the con-

tract instrument) to lay a track to a petroleum loading rack near Pampa, Texas. The pertinent portion of the contract in question provides:

"5. The Industry (Cities Service) agrees to indemnify and hold harmless the Railway Company for loss, damage, or injury from any act or omission of the Industry, its employees or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about The Track; and if any claim or liability shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally."

The record discloses that there were two separate submissions of fact issues to the jury. The jury's findings on the first submission of issues were as follows:

1. That the railway company failed to provide Plaintiff a reasonably safe place in which to work;

2. Such failure was a cause of Plaintiff's injuries;

3. That the railway company failed, prior to the occurrence in question, to make such an inspection of the Cities Service loading racks as a person using ordinary care would have made;

4. That such failure was a cause of Plaintiff's injuries;

5A. There were vapors at the loading rack which were hazardous to inhalation;

5B. The railway company failed to warn Plaintiff of such hazard;

5C. Such failure to warn Plaintiff of such hazard was negligence;

5D. Such negligence of the railway company was a cause of Plaintiff's injuries;

6A. The valve at the southest corner of the north loading rack was leaking;

6B. Cities Service failed to repair the valve;

6C. Such failure was negligence;

6D. Such negligence was a cause of Plaintiff's injuries.

On the second submission of special issues, the jury made the following findings:

1. The failure of the railway company to provide Plaintiff a reasonably safe place in which to work was not the sole proximate cause of Plaintiff's injuries;

2. The failure of the railway company to make such an inspection of the Cities Service loading rack as a person using ordinary care would have made was not the sole proximate cause of Plaintiff's injuries;

3. The failure of the railway company to warn Plaintiff of the hazard to inhalation at the loading rack was not the sole proximate cause of the Plaintiff's injuries;

4. The failure of Cities Service to repair the leaking valve was not the sole proximate cause of Plaintiff's injuries;

The railway company has cited various cases which it contends support its claim for full indemnity under the contract, including Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 183 F.2d 902 and Houston Belt & Terminal Ry. Co. v. Weingarten, Inc., 421 S.W.2d 431 (Tex.Civ.App. —Houston 1967, writ ref'd n.r.e.). Both of these cases involve a specific violation of a specific covenant of duty provided for in the contract. The instant case does not involve a violation of a specific contract provision. In the Booth-Kelly case, Industry was guilty of active negligence, that is, it did something (moved a wood cart too near the track resulting in injury to the plaintiff), as an affirmative act, which constituted negligence. It is noted that the finding of negligence against Cities Service was the failure to do something. Also, none of the cases cited by the railway com-

pany involve a situation wherein the finding of negligence of Industry was not *the* sole proximate cause of the injuries to the plaintiff. In the instant case there was no finding of sole proximate cause against either party, but both the railway company and Cities Service were found guilty of negligence by reason of failure to act. The railway company contends that Cities Service was guilty of active negligence and the railway company was guilty only of passive negligence, and that the parties were therefore not in pari delecto, since the finding that Industry's failure to repair the valve was a proximate cause. It is observed that there was no finding that the negligence of Industry was *the* proximate cause and is not analagous to the finding in *Booth-Kelly* that the negligence of Industry was "the active, direct, proximate and primary cause."

In the Booth-Kelly case the court sought to interpret the contract in the light of the common law, and in so doing discusses the characteristics of active and passive negligence. In that case the court made the finding that Industry's conduct constituted active negligence because of the affirmative action rather than the *failure* to do something. In general, the cases dealing with the subjects of active and passive negligence make the distinction that active negligence comes into existence when by affirmative action a person performs a negligent act, while passive negligence occurs when a person fails to "do something that should have been done." Austin Electric Railway Co. v. Faust, 133 S.W. 449 (Tex. Civ.App., 1910, writ dism'd); English v. Miller, 33 S.W.2d 477 (Tex.Civ.App.—Amarillo 1930, no writ); Booth-Kelly Lumber Company v. Southern Pacific Company, supra.

■ The railway company contends that since it was the duty of Cities Service to repair the valve, the railway company is entitled to restitution unless after discovery of a condition, the railway company acquiesced therein, citing Section 95, Restatement of Restitution. Also, it is con-

tended that the jury's finding that the railway company failed to inspect the loading rack indicates that there was no knowledge or acquiescence on the part of the railway company regarding the leaking valve. The jury found, however, that the railway company did not make such inspection *as a person using ordinary care would have made*. Also, the employee, Denton, testified there had been a ball of ice at the site where he observed it on the day of the injury for seven or eight months and that such condition was substantially the same as he had previously observed it. Under the holding of *Booth-Kelly*, it is recognized that if the railway company had knowledge of the condition, or failed to make due inquiry or take any action after discovery of the situation and acquiesced therein, indemnity is not available as a remedy. The knowledge of the employee of the existence of the condition at the racks for several months is knowledge imputable to the railroad company, and it is fundamental that knowledge without action is considered as acquiescence.

As previously stated, after both parties had rested, Cities Service was permitted to amend its pleading and reopen its case. By its amended pleading, Cities Service alleged that the railway company had represented to Cities Service "in connection with its investigation of the claim made the basis of plaintiff's suit, that it did not attempt to, nor intend in any manner whatsoever to involve Third Party-Defendant (Cities Service) in the matter of claim asserted by Plaintiff against the Railroad, and because of such representation by Third Party-Plaintiff (railway company) to Third Party-Defendant, the Third Party-Plaintiff has waived its rights alleged to exist under the written Contract of Indemnity, alleged in the Third Party Complaint, and has misled the Third Party-Defendant, and is now estopped to assert any cause of action for indemnity under such alleged contract."

■ It is here observed that the railway company contends, alternatively, that

it is entitled to full indemnity under the common law. This right could be asserted even though the contractual provisions were inapplicable. Under the common law, as between two parties who may be liable to a third party for tort, and one of the two parties is the active perpetrator of the wrong and the other is guilty of an omission of a duty, the active wrongdoer is liable to "indemnify the one whose wrong is only passive." East Texas Public Service Co. v. Johnson, 6 S.W.2d 344 (Tex.Civ. App.1928). Thus, where it has been determined that one party's negligence is active and that of the other party is passive, as between active and passive tortfeasors under the common law, as well as under the contract here involved, the passive wrongdoer would be entitled to recover full indemnity against the active wrongdoer.

 The two charges containing special issues and the verdicts containing the jury's answers hereinabove set out were received and accepted by the court, and the jury was discharged on November 11, 1970. No evidence regarding waiver and estoppel was heard and no issues concerning the same were requested or submitted to the jury. On November 24, 1970, the parties were instructed to return, and the court heard evidence on the question of waiver and estoppel. No findings of fact or conclusions of law regarding waiver and/or estoppel were made by the court. There was testimony by the General Claims Agent of the railway company to the effect that he was not, by virtue of his position, authorized to waive the contract, although he had written certain letters stating in effect that the railway company was not seeking to involve Cities Service in the matter of the claim, but was seeking to secure information and cooperation from Cities Service in connection with his investigation of the claim. Further, the claims agent disclaimed any knowledge of the existence of the Indemnity Contract between the railway company and Cities Service, stating that contracts of such nature were in the area of responsibility of the operating department and not the claims department. The trial court found that liability should be divided equally between the railway company and Cities Service, in effect allowing 50 per cent contribution from Cities Service. In the absence of requested issues for the jury's determination, and where there are no findings of fact or conclusions of law, and none requested, under Rule 279, T.R.C.P., it will be presumed on appeal that the court found in favor of the railway company and against Cities Service on its affirmative defenses of estoppel and waiver. See comment by Judge Alexander, Rule 279, T.R.C.P.; Hodges Special Issue Submission in Texas § 82, p. 214. We hold, therefore, that the contention of Cities Service that the railway company had waived its rights and was estopped to assert its alleged rights under the contract is overruled. In view of the foregoing, it is our opinion that the disposition of this case should be governed under the provisions of the contract entered into by the parties which has effectively preempted the railway company's alternative claim for indemnity under the common law. In this instance, we find no reason to go beyond the clear and explicit terms of the written agreement. Although it is recognized that indemnity contracts are to be strictly construed in favor of the indemnitor, contracts of this character cannot be extended by implication beyond the express terms of the agreement. Mitchell's v. Friedman, 157 Tex. 424, 303 S.W.2d 775 (1957); James Stewart & Co. v. H. B. Mobley, 282 S.W. 2d 290 (Tex.Civ.App.—Dallas 1955, writ ref'd). The contract clearly provides that if the damages are caused by the negligent acts or omissions of Cities Service, then the railway company is entitled to full indemnity. If the damages are caused by the joint or concurring negligence of both parties, resulting in liability or loss to the railway company, then Cities Service shall share equally with the railway company in the payment of the loss.

It appears that under the recognized standards for determining the character of

negligence of the parties and the jury findings, neither the railway company nor Cities Service was guilty of active negligence. On the other hand, due to *failure* of each to act, they are guilty of negligence of the same variety, passive in nature and are in pari delicto. In any event, it was a joint and concurrent negligence, with "sole cause" not being attributable to either party. According to Webster's International Dictionary, "concurrent" is defined as "contributing to the same event or effect." Under the jury's findings, the damages resulted from the combining of the negligence of both the railway company and Cities Service. We hold, therefore, that under the terms of the contract and the jury's findings, the third point of error of the railway company and Cities Service is each overruled.

In view of our holdings herein regarding the respective contentions of the parties, the judgment of the trial court is affirmed.