**Lewis CROWELL et al., Appellants,**

**v.**

**HOUSING AUTHORITY OF the CITY OF DALLAS, Appellee.**

**No. 637.**

Court of Civil Appeals of Texas, Tyler.

July 20, 1972.

Rehearing Denied Aug. 31, 1972.

Gerald W. Livingston, Charles L. Caperton, Dallas, for appellant.

Strasburger, Price, Kelton, Martin & Unis, Eugene Jericho, H. Norman Kinzy, Dallas, for appellee.

McKAY, Justice.

Appellants brought this suit as the children and heirs of Arbe J. Crowell, deceased, alleging under the survival statute, Article 5525, Vernon's Ann.Civ.St., that their father died as a result of carbon monoxide gas poisoning sustained from a defective gas heater provided in the apartment leased to him by appellee, and that appellee had exclusive responsibility of maintenance and repair. Appellee filed a motion for summary judgment on the ground that there was no genuine issue as to any material fact because the lease contract signed by deceased provided that appellee shall not be liable for any damages to a tenant such as deceased which might be caused by the condition of the premises. The trial court granted appellee's summary judgment motion and appellants bring this appeal on one point.

Appellants contend that the trial court erred in giving effect to the exculpatory clause in the lease agreement. The clause in question (part of Sec. 7 of the lease) provides: " * * * nor shall the Landlord nor any of its representatives or employees be liable for any damage to person or property of the Tenant, his family or his visitors, which might result from the condition of these or other premises of the Landlord, from theft or from any cause whatever."

The argument of appellants is that such an agreement violates public policy. They argue that such clause is unreasonable in that by its terms it permits the appellee to cause the death of the deceased with impunity and without liability, and that it represents an attempt by appellee to extract from a person of a class it was created to serve a waiver of liability for failure to carry out its statutorily imposed duties

and purposes as a condition to obtaining the benefits it was designed to bestow and is therefore void as against public policy.

Appellee's position is that the trial court was correct in giving effect to the clause quoted above from Sec. 7 of the lease and was therefore correct in granting the summary judgment. Appellee says that the duties of a landlord to his tenants may be modified by contract, and that the exculpatory clause in the lease evidences a mutual intent that the landlord shall not be liable for its own negligence.

■■■ Although "public policy" is a vague and broad term, it basically comprehends the protection of the public or the public good. Generally, a contract will not be held contrary to public policy if it is not immoral in itself or in conflict with any express law, or if the injury to the public is not clearly apparent. 13 Tex.Jur.2d Contracts, Sec. 171, pp. 364–367; Nedow v. Nicholson, 381 S.W.2d 723 (Tex.Civ.App., Houston, 1964, writ ref., n. r. e.). To be contrary to public policy a contract must also involve the interest of others than the parties to it. Evans v. General Insurance Company of America, 390 S.W.2d 818 (Tex.Civ.App., Dallas, 1965, n. w. h.).

In Spence & Howe Construction Company v. Gulf Oil Corporation, 365 S.W.2d 631 (Tex.Sup., 1963) it is said by Judge Norvell: "(o)nly a few jurisdictions, and Texas is not one of them, hold that a contract of indemnity against the results of one's negligence is contrary to public policy in that such contracts tend to encourage careless conduct." And in Ohio Oil Company v. Smith, 365 S.W.2d 621 (Tex.Sup., 1963), it is said: "(i)n this state, contracts written or construed so as to allow indemnity for liability arising out of indemnitee's own negligence have long been held not to be violative of the public policy." The Spence & Howe case involved a construction contract, and the Ohio Oil case involved an oil field work-over contract.

Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775 (1957), involved a building lease which had a provision that "the Lessor shall not be liable to Lessee * * * for any damage to person or property, * * * due to the building on said premises or any appurtenances thereof being improperly constructed, or being or becoming out of repair, nor for any damages from any defects or want of repair of any part of the building of which the leased premises form a part * * *." The court there said: "(a)n obligation to hold harmless from claims, liability or damage resulting from a specified operation or instrumentality will be enforced in accordance with its terms even though the indemnitee may thereby be relieved of the consequences of his own negligence."

It is not necessary that the contract specifically use the word "negligence," nor is it necessary to describe in detail or particularity what event or occurrence is to be covered in a contract as here presented provided the wording of the contract is sufficiently broad to cover the negligence of the indemnitee, and the intention of the parties be clear that such should be covered. Spence & Howe Construction Company v. Gulf Oil Corporation, supra; Mitchell's, Inc. v. Friedman, supra.

Appellants further claim that the Housing Authority of the City of Dallas is a public body corporate and politic and therefore as such may not obtain a release of liability from the persons it is required to serve as a prerequisite to obtaining the service. The statute providing for the creation of housing authorities makes each of such authorities "a public body corporate and politic." Article 1269k, Sec. 4, V.A.T.S.; Housing Authority of City of Dallas v. Hubbell, 325 S.W.2d 880 (Tex. Civ.App., Dallas, 1959, writ ref., n. r. e.).

We have found no Texas case directly in point on our fact situation here, nor have we been cited one. Two cases from other jurisdictions have been cited. Manius v. Housing Authority of City of Pittsburgh, 350 Pa. 512, 39 A.2d 614, 1944, held that where lease provided that the tenant agreed to release a housing authority from

liability for any injury "from any cause whatsoever, excepting only such injury or damage resulting from the wilfull acts" of the authority the exemption clause was valid and barred the action for negligence. The court said: "(a)ppellants urge, however, that assuming the covenant to be in discharge of negligence, such covenant is void as against public policy. It is argued that this is not a contract between private persons, relating strictly to their private affairs, but one to which the government is a party. Reliance is placed upon that line of cases prohibiting common carriers from contracting to relieve themselves from the responsibility for their negligence. * * * The analogy is not a proper one. Consideration of public policy would seem to be a weighty factor in permitting the Authority to contract for nonliability. When the purpose for which the Authority was created and the probable effect a rule of law similar to that applied to common carriers would have upon it are considered, it is readily apparent that this Court will not, by judicial fiat, impose a restriction upon the contracting power of appellee (Authority)."

In Housing Authority of Birmingham Dist. v. Morris, 244 Ala. 557, 14 So.2d 527, 1943, the Supreme Court of Alabama held that the authority had been granted an element of sovereignty—the power of eminent domain—and the general principle that agreements exempting persons from liability for negligence induces a want of care, and it is a good doctrine that no person may contract against his own negligence and that it is applicable to the authority engaged in a public service, and that public policy forbids that they contract for immunity for their negligence.

We choose to follow the Pennsylvania court and hold that such a contract is not contrary to the public policy of this state. While Article 1269k, V.A.T.S., by Sec. 12 grants Housing Authority eminent domain, and by Sec. 8 empowers the authority to exercise "all the powers neces-sary or convenient to carry out and effectuate the purposes and provisions of this Act, including the following powers in addition to others herein granted: (a) * * * to make and execute contracts and other instruments necessary or convenient to the exercise of the powers of the authority; * * * (b) Within its area of operation: to prepare, carry out, acquire, lease, and operate housing projects; * * * (c) To arrange or contract for the furnishing by any person or agency, public or private, of services, privileges, works, or facilities for, or in connection with, a housing project or the occupants thereof; * * * (d) To lease or rent any dwellings, houses, accommodations, lands, buildings, structures, or facilities embraced in any housing project * * *." By Sec. 9 it is provided that each authority "shall manage and operate its housing projects in an efficient manner so as to enable it to fix the rentals for dwelling accommodations at the lowest possible rates consistent with its providing decent, safe, and sanitary dwelling accommodations, and that no housing authority shall construct or operate any such project for profit, or as a source of revenue to the city."

The Housing Authority is not a public utility or a common carrier or a municipality whose business is affected with a public interest and whose services many times must be used exclusively by the public. Article 1446a, V.A.T.S.; Lone Star Gas Company v. Veal, 378 S.W.2d 89 (Tex. Civ.App., Eastland, 1964, writ ref., n. r. e.); Philippine Air Lines, Inc. v. Texas Engineering & Manufacturing Co., 181 F.2d 923 (5th Cir., 1950).

The basic rule of construction of statutes is that the courts must take statutes as they find them. Calvert v. Audio Center, Inc., 346 S.W.2d 420 (Tex.Civ.App., Austin, 1961, writ ref., n. r. e.). It does not appear that the legislature intended that appellee would not have the authority to contract as it did here.

We hold that the provision of the lease contract in question here is not contrary to the public policy of Texas, and that the trial court was correct in granting summary judgment for appellee Housing Authority.

Judgment of the trial court is affirmed.