**SAN JACINTO MAINTENANCE, INC., Appellant,**

v.

**Ben CAIN et al., Appellees.**

**No. 17264.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 8, 1979.

Rehearing Denied March 15, 1979.

Fulbright & Jaworski, Frank G. Jones, Houston, for appellant.

Tekell, Book & Matthews, Hal R. Upchurch, Houston, for appellees.

WARREN, Justice.

This is an appeal from a judgment requiring appellant, San Jacinto Maintenance, Inc. to indemnify appellee, Celanese Corp. for personal injury damages paid by Celanese to an employee of appellant.

The facts were stipulated in the trial court and are not in dispute.

On February 18, 1974 Ben Cain, an employee of San Jacinto Maintenance, Inc. was injured while working in the course and scope of his employment at the Celanese plant at Bayport, Texas.

The injuries received by Ben Cain were caused solely by the negligence of Celanese.

Prior to the injuries to Ben Cain, Celanese and San Jacinto Maintenance had entered into a written contract whereby appellant was to do certain maintenance and construction work for appellee at appellee's Bayport Plant.

Included in this contract was an indemnity agreement designated in Article 16, the construction of which is the basis of dispute between the parties.

The paragraph to be construed is as follows: Article 16. *INDEMNITY* Contractor, for itself and its affiliated companies, hereby assumes all risk of loss or damage to property of Contractor or its affiliated companies. Contractor hereby agrees to indemnify, protect and save Company harmless from and against, and to reimburse Company for any and all loss, liability, demand, expense or cost, of every kind and nature, for damage to or loss of property of any person, firm or corporation, and for injury to, sickness or death of, any person whomsoever arising, in whole or part, out of or in connection with Contractor's performance of work hereunder. For the purpose of this article, the activities of Contractor, its agents on or about Company's premises shall be deemed to relate to the performance of the work hereunder, whether or not such activities are within the scope of their agency or employment. Notwithstanding the foregoing indemnity provision it is understood and agreed that Contractor's liability to Company under this Article 16 for indemnity or payment of money for injury, sickness, disease or death of or damage to property of, any person caused solely by the negligence of Company shall not exceed Contractor's limits of liability under any then effective insurance policy or policies covering any such occurrence; provided, however, that such limits shall never be less than the limits of insurance coverage specified in Exhibit "B" hereof. Contractor shall assume on behalf of Company and conduct with due diligence and in good faith the defense of any suit against Company, whether or not Contractor is joined or impleaded therein, seeking recovery for any loss or damage to property or death, sick-

ness or injury of any person within the coverage of this Article 16, even if such suit is groundless, false or fraudulent; provided, however, that without relieving Contractor of any of its obligations hereunder, Company may elect to defend or participate in the investigation and/or defense of such suit at its own expense.

The question is whether the indemnity agreement clearly expresses in unequivocal terms an obligation by San Jacinto Maintenance, Inc. to indemnify Celanese Corp., from the consequences of its own (Celanese) negligence.

This rule was stated by the Supreme Court of Texas in *Firemans Fund Ins. Co. v. Commercial Standard Ins. Co.,* 490 S.W.2d 818 (Tex.1972),

. . . (A) Contract of indemnity will not afford protection to the indemnitee against the consequences of his own negligence unless the contract clearly expresses such an obligation in unequivocal terms . . . [w]e have, in fact, progressed toward the so-called "express negligence" rule as near as is judicially possible without adopting it and thereby requiring in all cases that the parties state, in so many words, that they intend to save the indemnitee harmless from liability for his own negligence. In this connection, it should be clear from our opinion in *McCann* [*Joe Adams & Son v. McCann Construction Company,* 471 S.W.2d 721 (Tex.1971)], supra, including its discussion of the leading cases and modification of our opinion in *Ohio Oil Co. v. Smith,* 365 S.W.2d 621 (Tex.1963), that broad general statements of the indemnity obligation are not sufficient to protect an indemnitee against his own negligence, and that the only presently recognized exceptions are limited to (1) agreements in which one person clearly undertakes to indemnify another against liability for injuries or damages caused by defects in certain premises or resulting from the maintenance or operation of a specified instrumentality as in *Mitchell's Inc. v. Friedman,* [157 Tex. 424, 303 S.W.2d 775 (1957)], supra, and *Houston & T. C. R. Co. v. Diamond Press Brick Co.,* 111 Tex. 18, 222 S.W. 204, 226 S.W. 140 (1920); (2) agreements which fall within the peculiar circumstances of the indemnitor having complete supervision over the property and employees of the indemnitee in connection with the performance of the indemnitor's contract, as in *Spence & Howe,* [*Spence & Howe Construction Co. v. Gulf Oil Corp.,* 365 S.W.2d 631 (Tex.1963)], supra; and (3) contracts in which there is an unequivocal provision that indemnitor will protect and indemnify the indemnitee from any and all liability by reason of injuries to indemnitor's employees as in *Ohio Oil,* supra.

In our case the second sentence in the indemnity agreement. "Contractor hereby agrees to indemnify, protect and save Company harmless from and against, and to reimburse Company for any and all loss, liability, demand, expense or cost, of every kind and nature, for damage to or loss of property of any person, firm, or corporation, and for injury to, sickness or death of, any person whomsoever arising, in whole or part, our [sic] of or in connection with Contractor's performance of work here-under", is a general indemnity agreement and standing alone would clearly not pass the Firemans Fund test. However, the fourth sentence under Article 16 "Notwithstanding the foregoing indemnity provision, it is understood and agreed upon that Contractor's liability to Company under this Article 16 for indemnity or payment of money for injury, sickness, disease or death of, or damage to property of any person caused solely by the negligence of Company shall not exceed Contractor's limits of liability under any then effective insurance policy or policies covering any such occurrence", when considered with the second shows that the intention of the parties was that Contractor (appellant) would be liable to Company (appellee) for the consequences of Company's negligence but only to the limits of the insurance carried by Contractor. Any amount of damages in excess of the insurance coverage would be borne by Company (Celanese).

The contract clearly falls within (3) as cited above in *Firemans Fund Ins. Co. v. Commercial Standard Ins. Co.*

The Judgment of the court is affirmed.